STATE EX REL. FARMERS & MERCHANTS STATE BANK, Respondent, vs. SCHANKE, City Clerk, Appellant.

*May 15—June 15, 1945.*

*R. H. Gollmar* of Baraboo, for the appellant.

For the respondent there was a brief by *Walker & Latton* of Portage, and oral argument by *Dorothy Walker*.

MARTIN, J.    Wisconsin Dells is a city of the fourth class with a population of one thousand eight hundred.    During the summer months many tourists stop there.    From 1910 to

February 26, 1944, the city had two banks: The Kilbourn State Bank, hereinafter referred to as the "selling bank;" and the Farmers & Merchants State Bank, hereinafter referred to as the "purchasing bank." The Kilbourn State Bank was the oldest. For many years it was owned, except for three or four qualifying shares, by W. S. Stroud, who died about six years ago. He was a man of considerable wealth. On his death control of the bank passed to his son, Ray Stroud, an attorney engaged in the practice of law in the city of Madison.

After the death of W. S. Stroud, and during a period of about two years preceding February 26, 1944, there were some indirect negotiations between the banks toward a sale of the Kilbourn State Bank to the Farmers & Merchants State Bank. Active negotiations toward a sale took place during the two or three months prior to February 26, 1944. These negotiations were carried on between Mr. Stroud and Mr. Amann, president of the purchasing bank.

The negotiations culminated in a contract whereby the purchasing bank purchased assets and assumed liabilities of the selling bank, totaling approximately $1,434,395.69. As a part of the transaction, and on February 26, 1944, the Kilbourn State Bank sold and conveyed to the Farmers & Merchants State Bank its bank building, furniture, and fixtures. The agreed consideration for the bank building was $20,000; and for the furniture and fixtures, $8,000. The conveyance of the real estate on which the bank building was located included that part of the lot to the rear of the bank on which was located a two-story frame building and a garage; that is, all the real estate and improvement thereon sold for $20,000.

For the 1944 tax the assessor assessed the real estate and buildings as follows: Land on which bank building is located, $5,000; bank building, $29,000; warehouse portion of lot, $1,050; warehouse building, $950; making a total assessment of $36,000. For a number of years prior to 1938 the real

estate of the Kilbourn State Bank, including the building and that portion of the lot to the rear on which the warehouse and garage were located, was assessed at $23,500. In 1938 there was a reassessment of all the city property. The assessment of the Kilbourn State Bank property in 1938 was $36,000. No change has since been made in this assessment and no objection to this value was ever made by the Kilbourn State Bank. No change or additions were made to the property from 1938 to 1944.

Before the sale the selling bank carried this real estate on its books at $16,500, and the furniture and fixtures at $6,472; and carried insurance against loss by fire on its bank building in the sum of $10,000, on its warehouse in the sum of $1,000, and on its furniture and fixtures in the sum of $2,000. After the sale the purchasing bank, with the consent of the Federal Deposit Insurance Corporation and the banking commission, carried the bank building in its financial statement at $20,000, and the furniture and fixtures at $9,328, some additional furniture and fixtures having been purchased subsequent to the sale. Since the sale the equalizing committee of the Columbia county board has determined that the assessed valuations in Wisconsin Dells are one hundred twenty per cent of the equalized assessed valuations in Columbia county.

At the hearing before the board of review D. F. Pauls, senior bank examiner, testified in behalf of the respondent bank. He testified that he had charge of bank consolidations and sale of assets for the banking commission; that he was familiar with the value of bank buildings and their furniture and fixtures; that there is a limited sale for such buildings; that they sell at tremendous sacrifices, their cost of reproduction affects market value very little; that in small towns in Wisconsin there are several bank buildings which have not been occupied or rented since 1933; that bank buildings have frequently sold at less than their book value; that on February 26, 1944, and thereafter, the fair market value of the

Kilbourn State Bank real estate and the buildings thereon was $20,000; that such sum could not have been obtained except from another bank; that he based his testimony on his personal knowledge of sales of bank buildings in cities and villages having a population less than three thousand; that sales of bank property are not similar to sales of other real estate; that his knowledge of the market value was based on other sales of property of closed banks and of going banks which consolidated or merged.

E. C. Amann, president of the purchasing bank, testified that said bank still owns the building from which it moved into the building of the selling bank; that since February 26, 1944, they have been trying to sell or rent their former building but have had no opportunity to do either, although they have advertised it extensively; that the building of the selling bank would be hard to sell except for bank purposes because it is not on the ground level; that it has a vault on the main floor that would have to be remodeled for other purposes. He testified that in 1944 the market value of the building in question, which was built about 1905, was $20,000; and that the value of the furniture and fixtures was $8,000.

Mr. Amann further testified that there is a poor marketability for bank buildings; that in Prairie du Sac a beautiful bank building is used as a drug store; that in Mauston a modern, large bank building is used for a tavern and a drugstore; that in Columbus a bank building which cost over $70,000 was sold to a reorganized bank for $14,000; that in Richland Center a bank building that at one time had a $100,000 bond issue on it sold for less than $20,000; that in Marshfield a building which cost about $150,000 sold for $25,000 to a new bank; and that at Rio a bank building has stood idle since 1933.

The board of review offered no testimony on market value. The city assessor did not testify, nor did the two men who assisted him in the city's reassessment of 1938. The only witness called by the board of review was the city clerk. He did not testify on the subject of market values.

Appellant argues that the sale was not made under normal and usual circumstances and did not overcome the presumption of correctness of the assessor's valuation. The respondent concedes that the rule is that in order for an actual sale to be controlling on assessment value, it must be shown that the sale was made under such circumstances as would lead to the conclusion that the price was that which ordinarily could be obtained at a private sale. *State ex rel. Collins v. Brown,* 225 Wis. 593, 275 N. W. 455.

Appellant contends that the sale was not made under normal and usual circumstances because the negotiations contemplated the purchase by the Farmers & Merchants Bank of the Kilbourn State Bank as an entirety; that there was no discussion of the sale of the building alone. In this connection, it appears without dispute that during the two or three months of the active negotiations between Mr. Stroud and Mr. Amann the purchasing bank had the privilege of examining and did examine all assets and liabilities of the selling bank, and that the purchasing bank could take over such assets of the selling bank as it chose. While it is true that the selling bank would not have sold its bank building unless the parties reached an agreement as to the assets and liabilities to be taken over and assumed by the purchasing bank, this did not enter into the negotiations as to the sale price of the Kilbourn State Bank building and furniture and fixtures. It appears without dispute that at all times during the negotiations both banks and the estate of W. S. Stroud were in sound financial condition. There was no reason why either bank had to buy or sell, and there is uncontradicted testimony that the assets of the selling bank could have been disposed of on the market within forty-eight hours. There were no persons who owned stock in both banks and none of their officers were the same.

The testimony shows that Mr. Stroud and Mr. Amann were dealing at arm's length. Each was capable of taking care of himself in a business deal. There is also testimony that there is no business building in Wisconsin Dells that rents for more

than $100 a month.    There is testimony as to assessments, including some sales, of six different properties within a block or two of the Kilbourn State Bank building:

(1) The building formerly occupied by the Farmers & Merchants Bank.    It is a corner building with a stone and plaster front.    The first floor was occupied by the bank prior to February 26, 1944, the second floor was used for offices at a rental of $45 per month.    The first floor was on the street level.    The land was assessed at $2,000, and the improvements at $8,200.    It is located near the city hall and city auditorium.    There is testimony to the effect that it is the best business corner in the city.    This bank building is twenty-two feet by sixty feet.    The Kilbourn State Bank real estate is fifty feet by one hundred twenty-five feet.    The building is forty feet by sixty-nine feet.

(2) The Stuelke drugstore corner, which is forty feet by one hundred twenty feet.    It is just across the street from the Kilbourn State Bank building, and includes three buildings and the lots.    The total assessment is $15,725, of which $6,375 is for the land, and $9,350 for buildings.

(3) The I. G. A. store and building next to it on the north forty feet of lots 1 and 2, block 68.    The land is assessed at $14,000; improvements, $6,000.    The area is forty feet by one hundred feet, and is on the opposite corner from the Kilbourn State Bank.

(4) The Van Ells garage, one block from the Kilbourn State Bank.    It was sold in 1943 for $7,000 and was then assessed for $9,700.

(5) The Plumb building, two blocks from the Kilbourn State Bank.    It was sold in 1944 for $3,000, assessed for $4,400.

(6) The Duclos store building, within one-half block of the Kilbourn State Bank building.    It was sold in 1943 for $6,000, was assessed for $10,000.

Sec. 70.32, Stats., provides for the valuation of real estate for tax purposes, and, so far as here material, is as follows:

"(1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. . . ."

In *State ex rel. Hennessey v. Milwaukee,* 241 Wis. 548, 549, 6 N. W. (2d) 718, the court said:

"Real estate must be assessed at its fair market value, and that the market value of real estate is what property will sell for upon negotiations resulting in sale between an owner willing but not obliged to sell and a willing buyer not obliged to buy." Citing *Estate of Ryerson,* 239 Wis. 120, 125, 300 N. W. 782.

In *State ex rel. Kenosha Office Bldg. Co. v. Herrmann,* 245 Wis. 253, 257, 14 N. W. (2d) 157, 14 N. W. (2d) 910, the court said:

"The usual course in *certiorari* to review the action of a board of review has been for the trial court to determine whether the undisputed evidence submitted by the taxpayer was such as to show the assessment objected to was not based on sale value as fixed by the statute. If so the assessment has been set aside. Where the evidence so produced was controverted,—if in any reasonable view the evidence as a whole would support the assessment,—the assessment has been upheld. Also, if the record before the court showed that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper considerations or went upon a false assumption or theory in determining the amount, or gave to facts considered unwarranted effect or drew from them unwarranted conclusions the assessment has been set aside."

In the instant case appellant, before the board of review, relied on the rule that an assessor's valuation is presumptively

correct. That, however, is only a presumption, it is not evidence. It disappears upon the introduction of any evidence showing it to be incorrect or inaccurate. *Smith v. Green Bay,* 223 Wis. 427, 271 N. W. 28; *State ex rel. Collins v. Brown, supra,* p. 595.

In the instant case we have an actual sale of the property in question for $20,000. We have the record of other assessments and sales in the immediate neighborhood of the selling bank; in addition, the testimony of Mr. Pauls and Mr. Amann.

"Where there is competent testimony, unimpeached by other evidence, which shows that the assessor's judgment is at fault, such evidence cannot be disregarded by the board of review. If the board does disregard it, jurisdictional error is committed." *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 651, 152 N. W. 450, and cases there cited.

*By the Court.*—Judgment affirmed.

BARLOW, J., dissents.