Rosen, and others, Appellants, v. City of Milwaukee,
Respondent.

*No. 75–26. Argued May 3, 1976.—Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 681.)

654

656

For the appellants there was a brief by *Peregrine, Marcuvitz, Cameron, Peltin, Hersh & Lensky, S. C.* of Milwaukee, and oral argument by *Robert L. Hersh.*

For the respondent there was a brief by *James B. Brennan,* city attorney, and *Walter J. Schutz,* assistant city attorney, and oral argument by *Walter J. Schutz.*

BEILFUSS, C. J. The appellant-landowners contend that the assessor and the board of review did not make the valuations in accordance with the statutes, and that there was no credible evidence to sustain the decision of the board of review.

The appellants are the owners of three parcels of improved real estate located in the city of Milwaukee. Parcel A, owned by Michael D. Rosen, is a 48-unit apartment building located at 4635 South 20th Street. Parcel B, owned by Horace J. Rosen and Sidney J. Grossman, is a 24-unit apartment building located at 1400 East Warnimont Avenue. Parcel C, also owned by Horace J. Rosen

and Sidney J. Grossman, is a 12-unit apartment building located at 3615 South 60th Street.

In July of 1969, the appellants filed written objections to the real estate tax assessments on their properties for 1969. The tax assessment roll for 1969 shows that the appellants' properties were originally assessed as follows:

Parcel A: Land—$47,520; Improvements—$286.650
Parcel B: Land—$21,120; Improvements—$147,900
Parcel C: Land—$11,000; Improvements—$67,650

The testimony presented at the hearing before the board of review, held on September 22, 1970, was substantially as follows:[1]

Bernard Kristal, a certified public accountant, testified on behalf of the appellants. He stated the owners' records indicated that the total cost of parcel A, including land, building, landscaping, appliances, carpeting and parking lot, was $514,829.39. Of that amount, $67,838.60 was attributed to the land. The gross rental income from the property for 1969 was $92,417.50 and the net income before depreciation on the property and before interest on the indebtedness was $48,155.42.

With respect to parcel B, Kristal testified the total cost was $253,745.37. $29,220.10 was attributed to the land. The gross rental income for 1969 from parcel B was $45,940, and the net income before depreciation and interest was $24,312.44. The total cost of parcel C was $113,227.63. Of that amount, $17,251.50 was attributed to the land. The gross rental income from parcel C for 1969 was $21,253.83 and the net income, before depreciation and interest, was $10,273.10.

Lewis Gral, an investment real estate broker with thirteen years of experience, also testified on behalf of

[1] The record and briefs contain some arithmetical inconsistencies as to the dollar amounts of the valuations.

the appellants. Gral stated that, based upon testimony by Kristal as to the net income produced by the properties, he could express an opinion as to the fair market value of each parcel. This estimation of value, Gral stated, was derived by "using the gross multiplier of 11 times the net income or a cap rate of 9.1 per cent." Employing this method as to each of the parcels, Gral gave the following estimates of market value: Parcel A—$529,709; Parcel B —$267,436; Parcel C—$113,000.

William F. Wieseler, an assessor for the city of Milwaukee, testified that he assessed each of the parcels in question. Wieseler stated that he made a visual inspection of each of the properties. His estimation of the market value of each parcel was obtained by adding the estimated replacement cost of the improvements to the estimated market value of the land and deducting any depreciation on the improvements. Wieseler estimated the cost of replacing the improvements on parcel A to be $521,180 and the market value of the land to be $86,400, giving a total estimated market value of $607,580, which served as the basis for the assessment value. Wieseler considered the improvements on parcel A at full reproduction cost because they were completed in 1968, the base year for the 1969 valuation.

Wieseler estimated the replacement cost of the improvements on parcel B to be $268,900 and the market value of the land $38,400. Since the improvements on parcel B were also completed in 1968, they too were considered new for assessment purposes and the total estimated market value was $306,300. Wieseler estimated the replacement cost of the improvements on parcel C to be $129,550. Wieseler considered the improvements, built in 1965, to be 95 percent of condition new, giving an estimated sound value of $123,070. This amount was added to the estimated market value of the land of

$21,600 to give a total estimated market value for parcel C of $144,670.

At the board of review hearing Wieseler stated that he confirmed his estimates of market value by reference to sales of comparable property and the income-producing capacity of each parcel. No specific testimony in this regard was offered with respect to parcel A.

With respect to parcel B, Wieseler described two sales of property occurring in May of 1970. The first was of a 20-unit apartment building located at 4619 South Howell. That property sold for $250,000. The gross annual rent from the property was $34,800, indicating a gross multiplier of 7.18. The other property, located at 4920 South 14th Street, was a 21-unit apartment building which also sold for $250,000. Based upon a gross rental income of $39,060, Wieseler derived a gross multiplier of 6.4. Based on the figures provided by the appellants as to the gross rental income from parcel B, Wieseler noted that his estimated fair market value for the parcel was 6.19 times the gross income.

As to parcel C, Wieseler compared the sale, in January of 1969, of a 20-unit apartment building, located at 7607 West Waterford, about one mile west and three blocks south of parcel C. The sale price of that property was $285,000, indicating a gross multiplier of 6.7 times the annual gross potential income of $42,480. The gross multiplier for parcel C, based upon the testimony as to the gross annual income and Wieseler's estimates of fair market value was 6.08.

Following the hearing, the board of review sustained the assessed values assigned to each of the properties and confirmed the assessor's estimates of fair market value.

The valuation of real estate for tax purposes is governed by sec. 70.32 (1), Stats. 1971, which provides:

"**Real estate, how valued.** (1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. . . ."

This court has consistently construed the statute to mean that real property must be assessed on the basis of its "fair market value." That is, the amount it will sell for upon negotiations in the open market between an owner willing but not obliged to sell and a buyer willing but not obliged to buy.[2]

The court has also set forth the standards for review on certiorari of a valuation of real property for tax purposes. It is not the function of the courts in such cases to make an assessment of property or to order that an assessment be entered on the assessment roll at any fixed sum. Their sole function is to determine, from the evidence presented to the board of review, whether the valuation was made on the statutory basis.

In *State ex rel. Evansville Mercantile Asso. v. Evansville, supra,* at pages 42, 43, this court summarized the principles to be observed by the courts in determining whether a valuation has been made upon the statutory basis:

" 'There is a presumption that the assessor's valuation is correct. Such valuation will not be set aside in the absence of evidence showing it to be incorrect. *State ex rel. Collins v. Brown,* 225 Wis. 593, 275 N. W. 455; *State ex rel. Enterprise Realty Co. v. Swiderski,* 269 Wis. 642, 70 N. W. (2d) 34.

---

[2] *See: State ex rel. Markarian v. Cudahy* (1970), 45 Wis. 2d 683, 685, 173 N. W. 2d 627; *State ex rel. Hennessey v. Milwaukee* (1942), 241 Wis. 548, 6 N. W. 2d 718; *State ex rel. Farmers & M. State Bank v. Schanke* (1945), 247 Wis. 182, 19 N. W. 2d 264; *State ex rel. Evansville Merc. Asso. v. Evansville* (1957), 1 Wis. 2d 40, 82 N. W. 2d 899.

" 'The burden of producing evidence to overcome this presumption is upon the person who seeks to attack the assessment, and the presumption survives until it is met by credible evidence. *State ex rel. Collins v. Brown, supra.*

" 'If there is a conflict in the testimony respecting the value of the property the court does not substitute its opinion of the value for that of the board of review. If there is credible evidence before the board that may in any reasonable view support the assessor's valuation, that valuation must be upheld. *State ex rel. North Shore Development Co. v. Axtell,* 216 Wis. 153, 256 N. W. 622.

" ' . . .

" 'If there be adduced before the board competent evidence which is unimpeached and uncontradicted and which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board. Disregard of such evidence is considered to be jurisdictional error. *State ex rel. I. B. M. Corp. v. Board of Review,* 231 Wis. 303, 285 N. W. 784.' "[3]

Section 70.32 (1), Stats. 1971, requires that the valuation of real property for tax purposes be made "from actual view or from the best information that the assessor can practicably obtain." This court has enunciated the method and considerations which assessors must utilize in order to comply with the statutory requirement that the fair market value be ascertained on the basis of the "best information" available. In *State ex rel. Markarian, supra,* this court stated at page 686:

"The 'best information' of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on the value of the property in order to determine its fair market value. However, it is error to use this method 'when the market value is estab-

---

[3] *State ex rel. Garton Toy Co. v. Mosel* (1966), 32 Wis. 2d 253, 258, 145 N. W. 2d 129; *Central Cheese Co. v. Marshfield* (1961), 13 Wis. 2d 524, 534, 109 N. W. 2d 75.

lished by a fair sale of the property in question or like property.' *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N. W. 2d 34."

The factors which are considered relevant to the determination of market value where there has been no sale of the property in question or of reasonably comparable property include costs, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals procured by the owner.[4]

Here it is undisputed that there were no recent sales of any of the parcels in question. The assessments to which the appellants have objected were initially based upon estimations of market value by the assessor, William Wieseler. Wieseler's valuations followed a visual inspection of each parcel and were obtained by adding the estimated replacement cost of each building, less estimated depreciation, to the estimated market value of the land. The appellants do not claim that this is not an acceptable method of valuing real property. However, they do contend that the board of review erred in sustaining an assessment based upon this method of valuation where there was uncontroverted evidence before it concerning the actual cost of construction and the actual cost of the land. This evidence, the appellants point out, indicates that the actual costs for each parcel were substantially lower than the estimations relied upon by the assessor.

This court has, in the past, indicated that there may be occasions where failure by the assessor or the board to consider evidence of actual costs will require that an

[4] *See: State ex rel. Garton Toy Co. v. Mosel, supra; Superior Nursing Homes, Inc. v. Wausau* (1968), 37 Wis. 2d 570, 575, 155 N. W. 2d 670; *State ex rel. Park Plaza S. C. v. Bd. of Rev.* (1973), 61 Wis. 2d 469, 474, 213 N. W. 2d 27.

assessment based on estimated costs be set aside. *See:
State ex rel. Garton Toy Co. v. Mosel, supra; Superior
Nursing Homes, Inc. v. Wausau, supra.* It is apparent
from those cases, however, that this rule is conditioned
upon the existence of at least the following circum-
stances: (1) Fair market value cannot be established by
a recent sale of the subject property or of reasonably
comparable property; (2) the assessor and board of
review must have considered reconstruction costs less
depreciation as the only element in arriving at market
value; (3) there must be evidence that the board ex-
cluded from consideration other relevant evidence of
value; (4) the construction must have been completed,
and the costs incurred, reasonably close to the time of
valuation; and (5) there must be no question concerning
the veracity or bona fide nature of the amounts sub-
mitted as evidence of actual costs.

As noted above, there were no recent sales of the prop-
erties involved here. In his testimony before the board
of review, however, William Wieseler stated that his
initial valuations, based on his estimations of reconstruc-
tion costs less depreciation, were confirmed by his later
analysis of sales of comparable property and of the in-
come-producing capacity of each of the parcels in ques-
tion. Wieseler made specific reference to the sales of
properties he considered comparable to parcels B and C.

The appellants contend that the sales relied upon by
the assessor are not of "comparable" property and, there-
fore, may not be considered in support of his initial valu-
ations. They point out that both of the sales referred to
in support of the valuation placed on parcel B took place
in May of 1970, about a year after the valuation date
in question here. They also point out that each of those
properties sold for $250,000, whereas the market value
assigned to parcel B was $306,300. The appellants argue
that the sale which was relied upon to support the valua-

tion placed on parcel C is not comparable because, "It is substantially larger, three years newer, and not in the same neighborhood as the subject parcel. Moreover, it sold for a price which is nearly double that which the assessor contends is the value of the subject parcel." ·

As was noted above, this court has held that in the absence of a sale of the property in question the sale of "reasonably comparable" property provides the "best information" of market value. Quite obviously, "reasonable comparability" depends upon the degree of similarity between the properties in question. Important considerations in determining whether particular property is sufficiently similar to the property being assessed to warrant reliance on its sale price as evidence of market value include its location, including the distance from the assessed property, its business or residential advantages or disadvantages, its improvements, size and use. It is also important to consider the conditions of sale, including its time in relation to the date of valuation, and its general mode and character insofar as they tend to indicate an arm's-length transaction.[5]

In his testimony before the board of review, William Wieseler gave a detailed description of each of the three parcels owned by the appellants. That description included the date of construction, size of the building and lot, number of apartment units on each floor, number and general layout of the rooms in each apartment, parking facilities, appliances furnished and services provided. In describing each of the comparables Wieseler also noted the date of construction and number of apartment units. He stated that the equipment, utilities and services provided each tenant of the "comparables" were substantially similar to those provided by the appellants on

---

[5] See, generally, Annot., Admissibility on issue of value of real property of evidence of sale price of other real property, 85 A. L. R. 2d 110, 114.

parcels B and C. On this basis it was Wieseler's opinion that the net income per unit from the comparable properties under typical management would vary very little from that attributed to the appellants' properties.

This testimony demonstrates an adequate basis for the comparisons made by the assessor. The fact that two of the sales occurred one year after the valuation date does not, standing alone, render the testimony concerning sales of comparable property incompetent on the issue of market value. No attempt was made by the appellants at the hearing to establish that this lapse of time materially affected the market value of the comparable properties. Similarly, there was no attempt to show that the distance between the locations of any of the comparable properties and the appellants' parcels made a material difference in the market values which could be attributed to them.

The appellants' objections based upon the differences between the sale prices obtained for the comparable properties and the valuations placed on their parcels must be considered in light of the manner in which the assessor's comparisons were made. Wieseler made no attempt to draw a direct comparison between the actual sale prices of the comparables and his valuations of the appellants' properties. Rather, he used the comparables to verify his valuations of the appellants' properties based on the "market approach" to determining or estimating market value. Under that approach, market value is estimated by multiplying the gross annual rentals by a "gross rent multiplier" or factor. The multiplier or factor used in estimating market value was verified by dividing the actual sale price of comparable property by the gross annual rental income from that property. Wieseler's estimated market value for parcel B indicated a gross multiplier of 6.19 times the gross rentals for 1969 of $45,940. The sale prices from the two properties

considered by Wieseler to be comparable to parcel B indicated gross multipliers of 7.18 and 6.4 times the gross annual rentals of those properties. The gross multiplier for parcel C, based upon Wieseler's estimation of market value and the gross rentals from the parcel for 1969, was 6.08. This compared with a gross multiplier of 6.7 for the comparable.

Lewis Gral, the appellants' expert, conceded that a "lot of appraisers use six times the gross [or] seven times the gross" to estimate the market value of the type of income-producing property involved here. Wieseler testified that his original estimations of market value for parcels B and C were confirmed by the sale prices of the comparable properties, using the "market approach" to determining market value. In *State ex rel. Park Plaza S. C. v. Board of Review, supra,* this court held that there was no reason why the "market approach" method of valuation involving the use of a "gross rent multiplier" may not be used for a comparison with other methods of determining market value. While the assessor's valuation of parcels B and C using the estimated cost of replacement less depreciation method could not stand alone because of the evidence of actual costs of recent construction, his testimony concerning the sales of comparable properties and the consequent confirmation afforded by the "market approach" provided credible evidence to support the board's action in sustaining the original assessments as to parcels B and C.

As to parcel A, Wieseler made no specific reference to the sale of any property he considered comparable. Wieseler testified, generally, that he had confirmed his original estimated valuation by reference to sales of comparable property and the income-producing capacity of parcel A. It is the appellants' contention that the only credible evidence before the board of review to sustain the assessor's valuation of parcel A was solely his estima-

tion of replacement cost less depreciation, and that the assessment on that parcel must be set aside because of uncontroverted evidence as to the actual construction costs of the recent construction.

Wieseler testified that he estimated the replacement of the improvements on parcel A, a 48-unit apartment building, at $521,180. Because the building was built in 1968, the base year for the 1969 valuation, Wieseler considered it to be new and made no deduction for depreciation. Wieseler added the estimated market value of the land of $86,400 to arrive at a total market value of $607,580. The appellants' accountant, Bernard Kristal, testified that the actual construction cost of the improvements on parcel A were $446,991 and that the actual cost of the land was $67,838 for a total actual cost of $514,829.

There is no specific contention by the appellants that the assessor's estimation of the market value of the land alone was erroneous. Wieseler testified that the substantial increase in land valuation from 1968 to 1969 was due to an overall increase in land valuation on a city-wide basis. Wieseler also indicated, in response to a question from the board, that the estimated value of the parcels of land was based on the per-dwelling-unit value assigned to the neighborhood of each parcel. Further, while it appears that the improvements were completed and considered new in 1968, there is nothing in the record to indicate when the land was actually purchased. In the absence of such evidence, testimony as to the actual cost of the land should not be considered better information of its value than the assessor's estimate.

However, it is apparent that the market value assigned by the assessor to the *improvements* on parcel A was not based on the "best information" available. Wieseler testified that the basis of the original assessment was his valuation based on *estimated* replacement cost. The improvements, having been completed in 1968, were con-

sidered new for 1969 valuation purposes so no allowance was made for depreciation. The appellants presented testimony, which was uncontroverted, that the actual construction costs were substantially lower than the assessor's estimate. Although the assessor stated he had confirmed his estimation by reference to comparable sales and to the income-producing capacity of the property, no specific evidence in this regard was offered. The only other evidence of value was the opinion of the appellants' expert who testified that, based on the capitalization of net income approach, parcel A had a fair market value of $529,709. This figure, also, was substantially lower than the assessor's estimate of $607,580. The record on certiorari, therefore, does not reveal the board of review gave any consideration to the actual recent construction costs as to parcel A. Because there was no evidence of sale of this property nor of any reasonably comparable sales of like property, the board was required to consider the evidence of actual costs. In *State ex rel. Garton Toy Co. v. Mosel, supra,* this court, quoting with approval from the circuit court's opinion, stated at page 261:

" '. . . There is nothing in the record to cast doubt concerning the veracity of these actual costs nor is there anything in the record even tending to indicate that such construction costs were anything other than bona fide costs, existing in the area at the time, and arrived at through arm's length negotiating. . . . No factor, theory or rule of thumb can substitute for very recent undisputed, actual market cost figures. In any event such actual construction costs cannot be wholly ignored when applying a factor or a theory, as was done here. . . .' "

The final aspect of this appeal concerns the relevance of the testimony of the appellants' expert, Lewis Gral, who gave his opinion as to the market value of each of the parcels in question by capitalizing net income. As to all of the parcels, Gral's estimations of market value

were substantially lower than the valuations set by the city assessor. The trial court, relying on *Mancheski v. State* (1970), 49 Wis. 2d 46, 181 N. W. 2d 420, was of the opinion that evidence of net income was inadmissible to establish fair market value on the ground that "the amount of profits from a business on the property are dependent upon too many contingencies to be accepted as evidence of fair market value of the property." The appellants point out that *Mancheski, supra,* involved a condemnation proceeding, and cite *State ex rel. Park Plaza S. C. v. Board of Review, supra,* in support of their contention that this court has considered capitalization of net income an acceptable method of arriving at market value for tax assessment purposes.

In *Mancheski, supra,* this court affirmed the general rule that evidence of net income is inadmissible to establish fair market value in a condemnation proceeding.[6] The court also noted, however, that evidence of net income is admissible to show market value where, because of the uniqueness of the property, no comparable sales are available. This rule is substantially the same as that applied to tax assessment cases. Income is a proper element to consider depending upon its circumstances, along with other factors, in determining market value. However, such factors may only be considered where there has been no sale of the property in question or of reasonably comparable property.

Although there was testimony in this case that the assessor relied on the sale of comparable property to confirm his estimations of fair market value based on estimated replacement cost less depreciation, a close analysis of the testimony reveals that the comparisons were only made to bolster the assessor's confirmation by the "mar-

---

[6] *See, also: Lambrecht v. State Highway Comm.* (1967), 34 Wis. 2d 218, 148 N. W. 2d 732.

ket approach" method. The only real difference between the assessor's method and Mr. Gral's method was that the assessor multiplied *gross* income by a factor whereas Gral multiplied *net* income by a factor. Each conceded that the other's procedure was an acceptable method of estimating market value, although each contended that his method was better. Both methods may be employed as aids to determining market value where no better information of value is available; neither should be considered conclusive in that regard but dependent upon circumstances as they appear that affect gross or net income.[7] Under the circumstances of this case, then, Gral's opinions as to market value were entitled to be considered by the board of review but were not binding on it.

We conclude there was credible evidence before the board of review to support its action in sustaining the assessment as to parcels B (1400 East Warnimont) and C (3615 South 60th Street). As to parcel A (4635 South 20th Street), we conclude the board's action should be reversed because the uncontroverted testimony as to the actual construction costs indicates that the assessor's unconfirmed valuation based on estimated replacement cost less depreciation was not an adequate basis to sustain his valuation.

*By the Court.*—Affirmed in part, reversed in part. No appeal costs to be taxed.

[7] *See:* Annot., *Income or rental value as a factor in evaluation of real property for purposes of taxation,* 96 A. L. R. 2d 666.