WALWORTH AFFORDABLE HOUSING, LLC, a Wisconsin limited liability company, Petitioner-Respondent,

v.

VILLAGE OF WALWORTH, a Wisconsin municipal corporation, Respondent-Appellant.

Court of Appeals

*No. 98–2535. Submitted on briefs June 29, 1999.—Decided August 4, 1999.*

(Also reported in 601 N.W.2d 325.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Peter A. Martin* of *Lathrop & Clark, LLP,* of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Theodore N. Johnson* of *Godfrey, Neshek, Worth, Leibsle & Conover, S.C.* of Elkhorn.

Before Brown, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. The Village of Walworth appeals from a circuit court order remanding to the Village of Walworth Board of Review (the Board) the issue of the appropriate property tax to be assessed to Walworth Affordable Housing, LLC (WAH). The circuit court determined that the Board's property tax assessment of WAH was made contrary to the Wisconsin Property Assessment Manual and case law. Because the Board conducted a cost approach assessment relying solely on the insurance replacement value of WAH's property, which did not include consideration of the property's economic obsolescence, we agree and affirm the circuit court's order.

WAH is the owner of a low-income residential rental housing project, Fox Lane Apartments. The housing project was constructed in 1996. Fifty percent of the project's $2,786,263 construction cost was financed by the sale of WAH's low-income Federal Housing Tax Credits (FHTC).

The FHTC program encourages low-income housing construction by subsidizing part of its cost. The program permits investors in the low-income housing project to claim the FHTC against their federal income tax. To receive these subsidies or tax credits, the housing project is subject to rent restrictions that force the

owners to rent to low-income tenants at below market rates for thirty years. These income and rental restrictions are an encumbrance on the property and must be assumed by any subsequent purchasers.

WAH sold its FHTCs to investors for $1,411,263 and mortgaged the remaining construction costs of $1,375,000. The village assessor, using a cost approach, determined WAH's property assessment to be $2,041,800. WAH objected to this assessment and a hearing was held before the Board.

At the Board hearing, WAH explained the FHTC program and presented an independent appraisal of $1,490,000 for its property. This amount was derived by the income approach and used WAH's actual income and expense data.

The Board rejected both the Village's cost approach assessment and WAH's income approach and determined, under an independent cost approach analysis, that the property's value was best indicated by the insurance replacement value, or $1,907,000. WAH objected to the Board's determination and petitioned the circuit court for a writ of certiorari. *See* § 70.47(13), STATS. Certiorari was granted.

The circuit court concluded that the Board's assessment was contrary to the law because it only relied on the insurance replacement value in determining the property's value. The court reversed the Board and instructed it to consider the economic obsolescence created by the rent restrictions. The Village appeals.

The Village contends that the Board's assessment was made in accordance with the law because the insurance replacement value is a relevant factor for estimating the property's value under the cost approach. WAH disagrees that the insurance replacement value can be the sole factor for estimating WAH's

value. It argues that, although the insurance replacement value is a relevant factor, the Board's exclusive reliance on it generated an assessment in excess of the property's "full value" by failing to consider the economic obsolescence created by the income and rent restrictions. We agree.

The complete methodology for reviewing a board of review's action is set forth in *State ex rel. Mitchell Aero, Inc. v. Board of Review*, 74 Wis. 2d 268, 280–82, 246 N.W.2d 521, 527–28 (1976), and we will not repeat it here. We note, however, that on a certiorari review, we examine the evidence before the board and ascertain if its valuation was made in accordance with the law. *See Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 661, 242 N.W.2d 681, 684 (1976). "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual . . . at the full value which could ordinarily be obtained therefor at private sale." Section 70.32(1), STATS. For real property assessments, "full value" means fair market value. *See Steenberg v. Town of Oakfield*, 167 Wis. 2d 566, 572, 482 N.W.2d 326, 328 (1992). Fair market value is best determined by a sale of the property or a comparable property. *See Rosen*, 72 Wis. 2d at 662, 242 N.W.2d at 685. Although the preferred method of commercial property valuation, a sales comparison is not always applicable. In those instances, the factors to be considered include "costs, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals procured by the owner." *Id.* at 663, 242 N.W.2d at 685.

The parties agree that a sales comparison is not the appropriate valuation method of WAH's property because neither it nor a comparable property had

recently been sold. The Wisconsin Property Assessment Manual provides for two additional methods for determining the value of federally-subsidized housing. First, the cost approach, which is an estimate of the cost of constructing a similar property, may be used. *See* 1 PROPERTY ASSESSMENT MANUAL FOR WIS. ASSESSORS 7–16, 9–27. Under the cost approach, "[t]he effect of federally subsidized housing restrictions would most likely be considered as economic obsolescence." *Id.* at 9–27. The village's assessor relied on this approach; however, the Board rejected the assessor's estimate.

The second method that may be used is the income approach. WAH's appraiser used this method. Because the actual income and expense data was only for a six-month period, the Board determined that this period was too short to demonstrate a sufficient pattern and rejected this approach. Instead, it relied on the property's insurance replacement value as an estimate of the property's cost.

Our supreme court addressed property tax assessments of federally-subsidized properties in *Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 495 N.W.2d 314 (1993). There, the value of a federally-subsidized housing project, Layton Garden, was determined by an income approach using estimated market rents. *See id.* at 629, 495 N.W.2d at 316. The court disagreed with the use of estimated market rents because Layton Garden was limited by the subsidy restrictions to charging below market rents. *See id.* at 631, 495 N.W.2d at 316–17. The court concluded that when determining a property's fair market value using the income approach, the income and rental restrictions must be taken into account. *See id.* at 631–32, 495 N.W.2d at 316–17. The court reasoned as follows:

In using estimated market rents and expenses, the city assessor essentially pretended that Layton Garden was not hindered by the HUD restrictions and valued the property at the amount the property would bring in an arm's-length transaction if Metropolitan were able to charge market rents. Layton Garden was, however, hindered by the HUD restrictions and it is undisputed that the HUD restrictions precluded Metropolitan from charging market rents. In fact, the city assessor admitted that Metropolitan could not have realized the assessed amount from a private sale in 1988. Furthermore, The Board's counsel conceded, during oral argument, that she would pay less for a building encumbered with HUD restrictions than she would for an otherwise identical building that was not encumbered with HUD restrictions. The city assessor's use of estimated market rents violated sec. 70.32(1), because the estimated market rents did not reflect the true market value of Layton Garden.

 After rejecting the other valuation methods, the Board applied the cost approach to WAH's property and used the insurance replacement value as the property's estimated value. By relying exclusively on the insurance replacement value, the Board failed to consider the property's economic obsolescence. Although the insurance replacement value is a relevant factor for consideration, the Wisconsin Property Assessment Manual states that the property's loss in value due to the rent restriction creates economic obsolescence that must be considered as part of the cost approach equation. *See* 1 PROPERTY ASSESSMENT MANUAL FOR WIS. ASSESSORS 9–27. Because WAH's property is encumbered with income and rental restrictions resulting from the FHTCs, these restrictions must be considered

in the property's valuation. The fair market value, or the value of the real estate determined by an arm's-length sale, would discount the property's worth because of these restrictions. The insurance replacement value reflects the cost to rebuild the buildings if they were destroyed. Considering the insurance replacement value alone does not demonstrate the property's fair market value because it neglects the economic obsolescence and, therefore, is contrary to the law. We, accordingly, affirm the circuit court's order.[1]

*By the Court.*—Order affirmed.

[1] The Village also objects to the circuit court's conclusions that the Board's assessment was arbitrary and that the assessor failed to consider the property's income and rent restrictions in his cost approach valuations. Because we have already addressed the dispositive issue in this appeal, we not need address the Village's remaining arguments. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if resolution of one issue is dispositive, this court need not address other issues raised).