Rodney G. STONE and Jeffrey
D. Stone, Plaintiff,

v. ·

PEOPLES TRUST & SAVINGS
BANK, Defendant.

No. 3:04–CV–033–RLY–WGH.

United States District Court,
S.D. Indiana,
Evansville Division.

March 28, 2005.

Charles A Gall, Jenkens & Gilchrist, Dallas, TX, Fred S. White, Evansville, IN, James Winford Bowen, Dallas, TX, for Plaintiff.

Brett J. Miller, Indianapolis, IN, Gregory G. Meyer, Evansville, IN, Kandi Kilkelly Hidde, Indianapolis, IN, Scott M. Stratman, Evansville, IN, for Defendant.

### ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

YOUNG, District Judge.

This case is before the court on the parties' cross motions for summary judgment. Plaintiffs, Rodney G. Stone and Jeffrey D. Stone ("Plaintiffs") filed a Motion for Summary Judgment Relating to Statutory Compliance and the Non–Marketability Discount Issue. Subsequently, Defendant, Peoples Trust & Savings Bank ("the Bank"), filed its Cross Motion for Partial Summary Judgment. For the reasons discussed in this entry, the court finds that summary judgment in favor of the Plaintiffs should be granted with respect to the issues raised.

### Factual Background

The facts of this case are largely undisputed. The parties seek a judicial determination of the value of the Plaintiffs' shares in the Bank pursuant to Ind.Code § 28–1–7.5–8, which provides for the valuation of shares in connection with the formation of a bank holding company. The Plaintiffs are minority shareholders in the Bank. Together, they own 303 of the Bank's 3,000 issued and outstanding shares. The Bank is a family-run, closely held corporation in which the Hendrickson family holds a majority of the outstanding common stock.

In September 2003, the Bank invited the Plaintiffs to an October 22, 2003 meeting to vote upon a Plan of Exchange providing for the establishment of a bank holding company of which the Bank would become

a wholly owned subsidiary. At the consummation of the Plan of Exchange, each share of the Bank's common stock would be involuntarily exchanged for one share of the holding company. The Plaintiffs voted by proxy in opposition to the Plan of Exchange, but the Plan was approved by a majority of the Bank's shareholders. In a letter dated November 10, 2003, and mailed November 19, 2003, the Plaintiffs objected to the Plan of Exchange and demanded payment for their shares pursuant to their dissenting shareholders' rights under Ind.Code § 28–1–7.5–8. Further, on November 26, 2003, the Plaintiffs submitted their share certificates for notation that demand for payment had been made.

The Plan of Exchange was consummated on December 31, 2003. On January 7, 2004, the Bank mailed written notice of the Plan of Exchange's date of effectiveness and offered to pay the dissenting shareholders $4,167 for each of their shares. Alex Sheshunoff & Co. Investment Banking ("Sheshunoff") performed the stock valuation for the Bank. Based upon the total equity of the Bank, Sheshunoff valued the shares of stock at $8,250 per share. However, this amount was reduced by 50% to reflect a non-marketability minority share value of $4,167 per share. On January 23, 2004, the Plaintiffs rejected the Bank's offer and instituted this suit on February 24, 2004, seeking judicial valuation of their shares.

### Standard of Review

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Id.* at 252, 106 S.Ct. 2505. Summary judgment is particularly appropriate in a situation such as this, where the facts of the case are largely undisputed and the parties have submitted cross motions for summary judgment.

### Applicable Law

This case serves as an inquiry into the meaning of the word "value" in Ind.Code § 28–1–7.5–8, which provides in pertinent part:

> **Rights of dissenting shareholders.** (a) If a shareholder votes in opposition to a plan of exchange..., the shareholder may, within thirty (30) days after the date of the meeting, make written objection to the exchange and demand that the bank...pay him the *value* of his shares. If the plan of exchange is effected, the bank...shall pay to the shareholder, upon surrender of the certificate or certification representing his shares, the *value* of his shares as of the day before the date on which the vote was taken approving the plan of exchange....

Ind.Code § 28–1–7.5–8(a) (emphasis added). Subsection (c) of the statute requires that the bank provide notice of the effective date of the plan of exchange and include a written offer to buy the dissenting shareholders' shares at a specified price "considered by the bank to be the value of the shares." Ind.Code § 28–1–7.5–8(c). Subsection (d) states that, if the bank and dissenting shareholder are unable to reach an agreement on the value of the shares

within the first thirty (30) days following the effective date of the exchange, either may file suit within the next sixty (60) days seeking a judicial determination of value. Ind.Code § 28–1–7.5–8(d).

No Indiana state or federal court has interpreted the appropriate standard for valuation with regard to Ind.Code § 28–1–7.5–8.

*Analysis*

This court can, rather quickly, determine that there has been compliance with the applicable statutory deadlines, found in Ind.Code § 28–1–7.5–8. The Plan of Exchange meeting took place on October 22, 2003, and the Plan of Exchange was consummated on December 31, 2003. As the undisputed facts show, the statutory deadlines and the parties' actions in compliance therewith are as follows:

| Statutory Requirement | Statutory Deadline | Date of Compliance |
|---|---|---|
| Shareholders' written objection and demand for payment pursuant to § 28–1–7.5–8(a) | November 21, 2003 | November 19, 2003 (mailing date of letter dated November 10, 2003) |
| Shareholders tender of shares, pursuant to § 28–1–7.5–8(a) | No statutory deadline | November 26, 2003 |
| Bank's notice of effective date and offer to purchase dissenters' shares, pursuant to § 28–1–7.5–8(c) | January 10, 2004 | January 7, 2004 |
| Deadline for suit to be filed, pursuant to § 28–1–7.5–8(d) | March 30, 2004 | February 24, 2004 |

Because the actions undertaken by the Plaintiffs fell within the statutory deadlines, the court finds that they have complied with Ind.Code § 28–1–7.5–8 as a matter of law.

However, the fact that Plaintiffs complied with the statute is not dispositive of the issue of share valuation or whether minority and non-marketability discounts may be applied under Indiana law. At issue is the meaning of the word "value" in Ind.Code § 28–1–7.5–8. Plaintiffs contend that "value" should be interpreted as the "fair value," or the value of shareholders' shares in the entity as a whole and as a going concern. The Bank contends that "value" should be interpreted as "fair market value," which takes into consideration factors such as lack of market, lack of liquidity, and lack of control when determining the value of shareholders' minority interests. On the basis of the analysis which follows, the court finds that, under Ind.Code § 28–1–7.5–8, the "value" of

Plaintiffs' shares in the Bank is the "fair value," and minority and non-marketability discounts are not permissible as a matter of law.

Because no Indiana state or federal court has determined the appropriate valuation standard under Ind.Code § 28–1–7.5–8, the court must look to Indiana state and federal decisions interpreting similar Indiana statutes. The most compelling case on point is *Wenzel v. Hopper & Galliher, P.C.,* 779 N.E.2d 30 (Ind.App.2002). The court in *Wenzel* analyzed the valuation of a minority shareholder's interest pursuant to the Indiana Professional Corporations Act ("IPCA"), Ind.Code § 23–1.5–1–1. The IPCA allows for the minority shareholder to receive the "fair value" of their shares in the corporation. Ind.Code § 23–1.5–1–1. While the IPCA does not define "fair value," it does contain a provision stating that the Indiana Business Corporation Law ("BCL") is applicable when it does not conflict with the IPCA's provi-

sions. *Id.* Under the BCL, "fair value" is "the value of shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." *Wenzel,* 779 N.E.2d at 38 (quoting Ind.Code § 23–1–44–3).

In *Wenzel,* the Indiana Court of Appeals adopted the general proposition that "fair value" is not the same as "fair market value." *Id.* (citing *HMO–W Inc. v. SSM Health Care System,* 234 Wis.2d 707, 611 N.W.2d 250, 255, n. 5 (2000)). The court distinguished the two terms as follows:

> "Fair value" carries with it the statutory purpose that shareholders be fairly compensated, which may or may not equate with the market's judgment about the stock's value. "Fair market value," on the other hand, represents "the amount for which property will sell upon negotiations in the open market between an owner willing to sell and a buyer willing but not obligated to buy."

*Id.* (citing *Rosen v. City of Milwaukee,* 72 Wis.2d 653, 242 N.W.2d 681 (1976)). In comparing facts, the *Wenzel* court noted that a "substantial majority of the cases from other jurisdictions have rejected the application of minority and marketability discounts when determining the fair value of stock in cases where a majority shareholder or corporation purchases the stock." *Id.* (referencing *Cavalier Oil Corp. v. Harnett,* 564 A.2d 1137 (Del.1989)), *Richardson v. Palmer Broadcasting Co.,* 353 N.W.2d 374, 379 (Iowa 1984), and *Brown v. Allied Corrugated Box Co.,* 91 Cal.App.3d 477, 478, 154 Cal.Rptr. 170 (1979). Favoring the opinion offered in *Hansen v. 75 Ranch Co.,* 288 Mont. 310, 957 P.2d 32, 41 (1998), the *Wenzel* court synthesized the majority of the courts' position on minority and marketability discounts as follows: the sale of minority shareholders' shares to majority shareholders consolidates or increases the power of those already in control, so applying a minority discount to such a case would result in a windfall to the purchasing majority shareholder, particularly because shares should have the same value in the minority shareholder's hands as in the majority shareholder's. *Wenzel,* 779 N.E.2d at 39.

Key to the outcome in *Wenzel,* the court found that marketability discounts were inappropriate in cases where a statute creates a ready-made market. *Id.* " It would be incongruous to discount the shares of the minority shareholder for lack of liquidity when valuation is being done in connection with a proceeding that creates liquidity." *Id.* (citing Charles W. Murdock, *The Evolution of Effective Remedies For and Valuation Of Minority Shareholders and Its Impact Upon Valuation of Minority Shares,* 65 NOTRE DAME L. REV. 425, 486 (1990)). This is precisely the situation before the court in the case at bar. Indiana Code § 28–1–7.5–8(c) required the Bank to provide the Plaintiffs, as dissenting shareholders, with a written offer to buy their shares. Thus, the statute creates a "ready-made" market for those shares. Allowing a minority or non-marketability discount to be deducted from their value would indeed amount to a windfall to the Bank and its majority shareholders, which is precisely what the *Wenzel* court sought to avoid.

The Bank asks the court to consider *Perlman v. Permonite, Mfg.,* 568 F.Supp. 222 (N.D.Ind.1983) as convincing authority for the proposition that "value" in this case should be interpreted as "fair market value." *Perlman* is simply not convincing authority. First, federal district court decisions are not binding on other districts or even judges within the same district. *TMF Tool Co., Inc. v. Muller,* 913 F.2d 1185, 1191 (7th Cir.1990); *U.S. v. Articles*

*of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987). While *Wenzel* is a lower state appellate court decision, and therefore non-binding on this court as well, such lower state court decisions most often provide an appropriate foundation for deciding a state law question unless there is a compelling reason to believe that the supreme court of the state would go in another direction. *Rekhi v. Wildwood Industries, Inc.,* 61 F.3d 1313, 1319 (7th Cir.1995).

Second, the district court's analysis does not seem to square with the intent of the Indiana legislature. The *Perlman* court interpreted the term "value" as that term was used under former Ind.Code § 23-1-5-7, which provided that, upon proper notice to a shareholder who dissents from a merger of his corporation, he may obtain the "value" of such shares at the effective date of the merger. The court determined that under Ind.Code § 23-1-5-7 "value" meant "fair market value" and that the shareholders' stock was subject to minority and non-marketability discounts because the shares represented less corporate control and virtually no market for the shares existed. *Perlman,* 568 F.Supp. at 229-30. However, Indiana Code § 23-1-5-7 was repealed in 1986. The chapter replacing that provision, Ind.Code 23-1-40-1 et seq., does not contain the term "value." Moreover, in subsequent sections, which were adopted following the repeal of Ind.Code § 23-1-5-7 and presumably with recognition of how the *Perlman* court had seen fit to apply "fair market value" in a dissenters' rights case, the state legislature used the term "fair value." In particular, Ind.Code § 23-1-44-8, which deals with dissenters' rights states:

> (a) A shareholder is entitled to dissent from, and obtain payment of the *fair value* of the shareholder's shares in the event of, any of the following corporate actions:

> (2) Consummation of a plan of share exchange to which the corporation is a party as the corporation whose shares will be acquired, if the shareholder is entitled to vote on the plan.

Ind.Code § 23-1-44-8 (emphasis added).

Because this more recent Indiana legislation expresses the intent that dissenting shareholders in a corporate merger situation receive value exclusive of the application of market discounts, this court is comfortable that the legislature intends the same for the very comparable situation where a bank forms a holding company. No logical reason exists to treat the dissenting minority shareholders under Ind. Code § 28-1-7.5-8 differently from dissenting shareholders under Ind.Code § 23-1-44-8. Thus, the court finds that application of minority and non-marketability discounts to Plaintiffs' shares is prohibited as a matter of law.

*Conclusion*

Because the Bank has not contested Plaintiffs' statutory compliance and because the court finds both that Plaintiffs have complied with Ind.Code § 28-1-7.5-8 and that allowing the application of minority and non-marketability discounts to minority shareholders' stock would create a windfall for the majority stockholders, in apparent conflict with the intent of the Indiana legislature, Plaintiffs' Motion For Summary Judgment Relating to Statutory Compliance and to the Non-Marketability Discount Issue is hereby GRANTED.

For the same aforementioned reasons, Defendant's Motion for Partial Summary Judgment is DENIED.