Stolze and wife vs. The Manitowoc Terminal Co.

STOLZE and wife, Respondents, vs. THE MANITOWOC TERMINAL COMPANY, Appellant.

*May 25 — June 23, 1898.*

(1, 2, 5) *Appeal by corporation: Insolvency and receivership: Undertaking: Immaterial error.* (3-8) *Railroads: Condemnation of land: Injury to land not taken: Evidence: Opinions as to value: Net profits: Sales of other lands: Instructions to jury.*

1. The insolvency of a corporation and the appointment of a receiver for it do not, *ipso facto*, operate as a dissolution, and therefore afford no ground for the dismissal of an appeal taken in its name.

2. An undertaking, given on appeal, to pay the judgment, if affirmed, as well as the costs and damages, although much broader than required, conferred jurisdiction of the appeal, and it was therefore competent for this court to allow such undertaking to be withdrawn and a new one substituted.

3. In proceedings to condemn land for a railroad right of way, evidence that a deep cut would cave in and injure adjacent land of the plaintiffs not taken was not inadmissible on the ground that it tended to show negligent construction.

4. In such a case a witness who was agent for the sale of real estate about sixty rods distant from the land in question, after having testified that he was acquainted with the market value of lots in the vicinity, that he had made sales, and what the market price of lots was, stated that he had a scale of prices of the same, and gave his opinion that such prices were the market value of the lots, and thereupon the memorandum was received in evidence. *Held,* that such evidence was not inadmissible on the ground that it was hearsay.

5. Even if such memorandum was inadmissible, its admission was a harmless error, in view of the testimony which the witness had already given without objection.

6. It was not error to permit an old resident and manufacturer who was somewhat familiar with the market price of outlying lots, or an architect or engineer who was reasonably familiar with the market price of lots, or a merchant who was treasurer of a local building and loan association and had been alderman, to give his opinion as to the value of the land taken; nor to allow the plaintiff to prove the net profits therefrom, when cultivated as a market garden.

Stolze and wife vs. The Manitowoc Terminal Co.

7. The selling price of other lands is admissible on the question of damages if the similarity in situation is near enough to afford some material assistance to the jury in determining the value of the land in controversy, the limits within which such evidence may be given being very much in the discretion of the trial court.

8. An instruction that there had been sales of other property in the neighborhood, and within a few years of the time of this sale,— some more remote and some closer; that "if there was property sold on the market exactly similar to this in all respects that would be the best possible criterion as to the market value of this property;" that no claim was made that any property exactly similarly situated was sold at exactly the same time; and that in determining the weight to be given to other sales "you must consider all the elements of similarity in situation and time, and dissimilarity, and determine how far they go to establish what would be a fair market value for this particular property, at the particular time in question," is *held* not to have been erroneous.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.* A motion by the respondents to dismiss the appeal was *denied.*

The cause was submitted for the appellant on the brief of *Howard Morris* and *Thos. H. Gill,* and for the respondents on that of *G. G. & C. H. Sedgwick* and *Timlin & Glicksman.*

Counsel for the appellant contended, *inter alia,* that the damages arising from a negligent construction of the railroad, and in this instance from a negligent or careless excavation, are wholly separate and distinct from damages for the taking or injury to the balance of the tract caused thereby, and cannot be recovered in the condemnation suit. It is not the *taking* of the strip for right of way which renders insecure the other property, but the fact that, after the taking, an improper construction or operation of the road causes injury to other lands. *Lyon v. G. B. & M. R. Co.* 42 Wis. 543; *Neilson v. C., M. & N. W. R. Co.* 58 id. 523; *Boothby v. A. & K. R. Co.* 51 Me. 318; 3 Elliott, Railroads, § 1005, and cases cited. He who offers testimony of the selling price of other lands must show that the lands sold

were similar in locality and character to the lands sought to be condemned, and the sales must not be too remote in point of time.    6 Am. & Eng. Ency. of Law, 619; *Watson v. M. & M. R. Co.* 57 Wis. 332, 349; *Washburn v. M. & L. W. R. Co.* 59 id. 364, 377; *Atkinson v. C. & N. W. R. Co.* 93 id. 362; *Uniacke v. C., M. & St. P. R. Co.* 67 id. 108, 114; *Chandler v. Jamaica Pond Aqueduct Corp.* 122 Mass. 307.

To the point that evidence showing depth of excavation or height of banks, and that the land outside the right of way is apt to cave in or needs a retaining wall for its support, is not probative of negligent construction, but bears upon the condition of and damage to the residue left after taking the part needed for the road, counsel for the respondents cited *Price v. M. & St. P. R. Co.* 27 Wis. 98; *Thompson v. M. & St. P. R. Co.* id. 93; *Manson v. Boston,* 163 Mass. 479; *Taylor v. Kansas City C. R. Co.* 38 Mo. App. 668; *Baird v. Schuylkill R. E. S. R. Co.* 154 Pa. St. 459; *Lasala v. Holbrook,* 4 Paige, 169; *Richart v. Scott,* 7 Watts, 460; *Stevenson v. Wallace,* 27 Grat. 77; *Kersey v. Schuylkill River E. S. R. Co.* 133 Pa. St. 234; *Fellowes v. New Haven,* 44 Conn. 240; *Orth v. Milwaukee,* 92 Wis. 232; *White v. Foxborough,* 151 Mass. 28; *Radcliff's Ex'rs v. Brooklyn,* 4 N. Y. 195, 200; *Hendricks v. Spring Valley M. & I. Co.* 58 Cal. 190.

CASSODAY, C. J.    This cause was tried on an appeal from the award of commissioners appointed to appraise the value of the lands described, in the city of Manitowoc, and taken by the defendant for its railroad right of way.    The lands taken and damaged by the construction of the road consist of a nearly triangular piece, containing about eight and one-half acres, just within the western city limits, between the cemetery on the north and the Chicago & Northwestern Railway right of way on the south; the same being very narrow at the westerly end, and widening out as it ran easterly.    The road was built almost through the center from west to east,

and the track was laid in a deep cut at the west end. The right of way taken was 200 feet wide for a distance of about 500 feet and 100 feet wide through the remainder of the land, a distance of about 800 feet. The right of way took about two and one-ninth acres of land. The plaintiffs bought the land from the city in 1882, and had improved and used it as a truck or market garden. It sloped from the high cemetery hill on the north to the southeast, and was composed of a warm soil or loam adapted to the raising of vegetables. The subsoil was gravel, sand, and clay at different places. The cut through this land made by the company was about thirty feet deep at the west end, and gradually came to the surface at the easterly side of the tract. The entire tract was on a side hill of gradual slope to the south, and the difference between the highest and lowest points was about fifty feet. There was on the land 2,600 feet blind drainage, 750 feet open drains, 1,110 feet blind drains, and 100 feet open ditch. There was a raspberry bed within the limits of the right of way in part, and two asparagus beds,— five sixths of one was in the right of way, and the whole of the other. There were wells or stop boxes which were both reservoirs and outlets for the drainage, and so arranged that the water could be backed into the ground, or let run out from these boxes. Some of these covered drains were constructed of lumber, and others of tile. Black soil was the upper soil, and the lower soil was gravel in part, and quicksand in part, and clay. There were hotbeds on the land,— 125 windows five feet long and four feet wide, 125 windows four feet long and five feet wide, which rested on planks. Eighty-four of the windows were heated by steam. There was a well on the land eighteen feet deep and of stone, two pumps in it, one to the boiler and one to the greenhouse; a fence inclosing the whole tract; three asparagus beds, each 2,000 square feet, and 500 plants in a bed. It required three years before the bed was in condition to be utilized. Two

of the asparagus beds were five years old, and one was two years old.   There was also a greenhouse or hothouse 100 feet long and 160 feet wide, constructed of wood, glass, and posts;. also boiler-house fourteen by sixteen feet, having a steam boiler six or seven feet high and thirty to thirty-four inches wide.

At the close of the testimony the jury returned a general verdict in favor of the plaintiffs, and assessed their damages at $9,000.   From the judgment entered thereon, April 10, 1897, the defendant appeals.

1. It appears that August 4, 1897, an execution was issued on the judgment against the defendant, and returned wholly unsatisfied; that thereupon a receiver of all the property of the defendant, under sec. 3216, R. S. 1878, was appointed, with the usual rights and powers; that the defendant was an insolvent corporation.   For these reasons, the plaintiffs insist that the defendant, as a moribund corporation, could not appeal, and hence they move to dismiss the appeal. The statute provides that "whenever any corporation shall have remained insolvent, or shall have neglected or refused to pay and discharge its notes or other evidences of debt, or shall have suspended its ordinary and lawful business for one whole year, it shall be deemed to have surrendered the rights, privileges and franchises granted or acquired under any law, and shall be *adjudged* to be dissolved."   R. S. 1878, sec. 1763.   It is enough to say that neither this section, nor any other section of the statute, makes such insolvency and receivership to operate *ipso facto* to dissolve the corporation, but simply declares an efficient cause for adjudging a dissolution in a proper action.   *Strong v. McCagg*, 55 Wis. 624; *Sleeper v. Goodwin*, 67 Wis. 577; *Combes v. Keyes*, 89 Wis. 309.   We must refuse to dismiss the appeal upon the ground mentioned.

Nor can we dismiss the appeal on the ground that the defendant was allowed to withdraw the undertaking served

with the notice of appeal and substitute a new one. That undertaking was, in effect, to pay the judgment, if affirmed, as well as the costs and damages, if any, on the appeal. It was sufficient to give the court jurisdiction under the statute. R. S. 1878, sec. 3052. The fact that it was very much broader than that section required did not prevent it from being good under that section. Since the court got jurisdiction by the appeal thus taken, it was competent for this court to allow the first undertaking to be withdrawn and a new one substituted, as was done. R. S. 1878, sec. 3068.

The motion to dismiss the appeal is denied, with $10 costs of motion.

2. Error is assigned because the court refused to strike out testimony, given without objection, to the effect that the deep cut would cave in and injure the adjacent land of the plaintiffs not taken. There is no ground for claiming that such evidence tended to prove negligent construction. Such error must be deemed overruled.

3. The assignment of error for the admission of alleged hearsay evidence as to the value of other lots is without substantial merit. The witness was the agent for the sale of real estate about sixty rods distant from the land in question; and after having testified that he was acquainted with the market value of lots in the vicinity, and that he had made some sales, and what the market price of lots was, he further testified that he had a scale of prices of the same, and gave his opinion that such prices were the market values of such lots; and thereupon such memorandum was offered and received in evidence, against objection. We cannot regard such evidence as hearsay. Even if the memorandum was erroneously admitted, yet, in view of the testimony which the witness has already given without objection, it was harmless error.

4. So, we must overrule the error assigned because an old resident and manufacturer, who testified that he was some-

what familiar with the usual market price of outlying lots in the city, was allowed to give his opinion as to value. The same was true of an architect and engineer who was reasonably familiar with the market price of lots and lands; also a merchant and treasurer of the Manitowoc Building & Loan Association, and who had been an alderman. It is conceded that a very liberal rule of evidence prevails in proving the market value of lands—especially lands situated and used and cultivated as these were. It must be so from the very nature of such property. *Moore v. C., M. & St. P. R. Co.* 78 Wis. 124. We perceive no error in allowing the plaintiffs to prove the net profits from the lands in question.

5. Error is assigned because the court admitted testimony tending to prove the selling prices of other lands not similarly situated. From the very nature of the case, no two pieces of land can be exactly alike. If the similarity is near enough to afford some material assistance to the jury in determining the value of the land in controversy, then such selling prices would seem to be admissible. If, on the contrary, they are so dissimilar as to mislead or prejudice the jury, then they are inadmissible. *Pierce v. Boston*, 164 Mass. 92; *Lyman v. Boston*, 164 Mass. 99; *Patch v. Boston*, 146 Mass. 52. "The limits within which evidence of such sales may be given are very much in the discretion of the trial court." *Watson v. M. & M. R. Co.* 57 Wis. 332.

6. In harmony with these adjudications, the court charged the jury that "there has been evidence of sales of other property in the neighborhood, and within a few years of the time of this sale,—some more remote, and some closer. Now, if there was property sold on the market exactly similar to this in all respects, that would be the best possible criterion as to the market value of this property. It doesn't appear, and it is not claimed, that any property was sold at exactly the same time,—that was exactly similarly situated, or sold at exactly the same time. Now, in determining the weight

and effect that is to be given to other sales as established by the testimony, you must consider all the elements of similarity in situation and time, and *dissimilarity*, and determine how far they go to establish what would be a fair market value for this particular property, at the particular time in question." The exceptions to these portions of the charge are overruled.

We find no reversible error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.