LAMBRECHT and wife, Appellants, v. STATE HIGHWAY COMMISSION, Respondents.*

*February 3—February 28, 1967.*

* Motion for rehearing denied, without costs, on May 9, 1967.

For the appellants there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Lee A. Bernsteen,* district attorney of Oneida county.

BEILFUSS, J.   The issues are: Was it error to admit the opinion evidence as to value based in part upon capitalization of income and, if so, was it prejudicial error?

The defendant, State Highway Commission, moved for a new trial upon the following grounds: (1) Because of errors in trial, and (2) in the interests of justice.

In the affidavit in support of the motion, one of the errors at law alleged by the defendant was "over objection, the expert witnesses for plaintiffs based their opinions of value upon an 'income approach' basis, which was admittedly founded upon testimony in a prior proceeding as to net income which deducted nothing for plaintiffs' own services; one of the plaintiffs also testified as to value upon the same basis; and the result of the verdict manifests that the jury considered that testimony favorably in reaching their verdict."

The trial court granted the motion for a new trial upon this phase of the motion and in doing so stated as follows:

"This court grants the defendant State Highway Commission of Wisconsin's motion to set aside this verdict and for a new trial because of the fact that the jury had be-

fore it testimony on the part of Mr. Foltz and Mr. Stone, two respected real estate men in this community, in which they placed values, but the obvious conclusion from their testimony is that they misunderstood the questions or misunderstood their responsibilities. There was no testimony in this case that would permit them to find values as they did in this case. And in view of the fact that their values now based upon what they claim them to be based upon, the income of the property, is so far different from what they theretofore determined to be the fair market value based upon reconstruction less depreciation, this court must conclude that their testimony was given because of a misunderstanding of their responsibilities in this case or a misunderstanding of the question or based upon an improper formula. They both testified that income property that returned the investment within five or six years would be considered a good investment and upon that basis they fix this value at around 39 or $40,000 before the taking. As a matter of fact, they included, both of them included, in what they thought to be the income derived from the property, the value of the services of three people, the two plaintiffs and their son. Obviously, their services, the value of their services should have been deducted from what they considered to be the net income of the property, and which would result in the true value of the income from the property and in using the formula they used or presumed to use they would have come to a much different conclusion.

"This court from the very beginning felt that this testimony was such that it would shock the conscience of the court to permit this verdict to stand based upon that evidence.

"The court grants the motion of the defendant to set aside the verdict and for a new trial."

The order for new trial was granted "because of error in trial" and not in the interests of justice.

Neither counsel's affidavit nor the court's statement to the effect that Foltz and Stone included the value of the services in the net income are exactly correct.

After Foltz and Stone had testified, counsel for the defendant moved to strike the testimony of Foltz, Stone,

and Mrs. Lambrecht as to their opinion of value derived from income approach. The motion was not granted. Foltz and Stone were both recalled and both testified that the fact that value of the services of the owners had not been deducted from the net profit would not change their opinions as to fair market value.

In innumerable cases we have stated that an order for a new trial rests in the discretion of the trial court and the order will not be set aside or reversed unless based upon an abuse of discretion.

The rule is subject, however, to the qualification as set forth in *Holtz v. Fogarty* (1955), 270 Wis. 647, 651, 72 N. W. (2d) 411:

"Counsel for defendants states correctly that the granting of a new trial for error or in the interest of justice rests largely in the discretion of the trial court. The rule does not apply, however, where it is clear that the court proceeded upon an erroneous view of law. *Weissgerber v. Industrial Comm.* 242 Wis. 181, 7 N. W. (2d) 415; *Graff v. Hartford Accident & Indemnity Co.* 258 Wis. 22, 44 N. W. (2d) 565; *Myhre v. Hessey,* 242 Wis. 638, 9 N. W. (2d) 106."

The State Highway Commission contends that the testimony of net income as given by the owners and used by the appraisers was inadmissible and incompetent to establish fair market value, and cites as authority 5 Nichols, Eminent Domain (3d ed.), p. 340, sec. 19.3 (1):

"**Commercial property.** If the owner of property uses it himself for commercial purposes, the amount of his profits from the business conducted upon the property depends so much upon the capital employed and the fortune, skill and good management with which the business is conducted, that it furnishes no test of the value of the property. It is, accordingly, well settled that evidence of the profits of a business conducted upon land taken for the public use *is not admissible* in proceedings for the determination of the compensation which the owner of the land shall receive." (Emphasis supplied.)

However, Nichols states an exception to the rule, 5 Nichols, *supra,* p. 354, sec. 19.3 (5) :

"It has been held that where the character of the property is such that a profit is produced thereby without the labor of the owner being expended thereon or where the profits derived from its use are the chief source of its value evidence of such profits is admissible as a criterion of the value of the property.

"Where property is so unique as to make unavailable any comparable sales data evidence of income has been accepted as a measure of value. . . ."

Cited as authority for the exception is a Wisconsin case, *Weyer v. Chicago, W. & N. R. Co.* (1887), 68 Wis. 180, 183, 31 N. W. 710, wherein it stated:

"The court was asked to instruct the jury that they had no right to take into consideration the income that might have been derived from the strip of land taken if it had not been taken. The court properly refused to give the instruction. In estimating the value of farming land, its productiveness, or the income which may [be] derived from it, is always considered. Indeed, there is no better nor safer criterion than this to get at its real value."

In *Stolze v. Manitowoc Terminal Co.* (1898), 100 Wis. 208, 214, 75 N. W. 987, the court stated:

"It is conceded that a very liberal rule of evidence prevails in proving the market value of lands—especially lands situated and used and cultivated as these were. It must be so from the very nature of such property. *Moore v. C., M. & St. P. R. Co.* 78 Wis. 124. We perceive no error in allowing the plaintiffs to prove the net profits from the lands in question."

This court has recently stated in *Ken-Crete Products Co. v. State Highway Comm.* (1964), 24 Wis. (2d) 355, 359, 129 N. W. (2d) 130:

"Under sec. 32.09 (6), Stats., the measure of damages in a condemnation proceeding where there is a severance is the difference between the fair market value of the whole property immediately before the taking and the

fair market value of the remainder immediately thereafter. By use of the phrase 'and without restriction because of enumeration' found in sec. 32.09 (6), it seems reasonable to conclude that the legislature intended that every element which affects fair market value should be considered. This is in accord with the great weight of authority. See 4 Nichols, Eminent Domain (3d ed. 1962), p. 3 *et seq.*, sec. 12.1, where the author states (p. 4) that, 'All elements of value which are inherent in the property merit consideration in the valuation process.' The author also states that evidence is admissible that the remainder area is no longer capable of use for a particular purpose or that its purpose or that its facility therefor has been impaired. See 4 Nichols, *supra,* sec. 14.243, and cases cited at note 4, page 580." [1]

It is undisputed that the highest and best use of the property prior to the taking was the use to which the property was devoted, namely, a combination general store, filling station, and residence. It was also conceded that there were no comparable sales in the area to consider to assist in forming an opinion as to the fair market value of this property. Foltz and Stone testified, in effect, that purchasers of this type of property were in fact buying property and a means of livelihood and that the volume of business and the profit derived therefrom were factors which both the buyer and seller took into consideration in arriving at a selling price.

Under the facts of this case we deem it was not error to admit the testimony of Foltz and Stone as to their opinions on fair market value calculated to a substantial degree upon capitalized income. They did state they were aware of the fact the value of the services of the owners had not been deducted from the net profit. The validity of their opinions could have been challenged by cross-examination and defense testimony. Mr. Graham, on behalf of the defendant, did testify that he did not use

---

[1] See also *Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. (2d) 208, 71 N. W. (2d) 276, and *Volbrecht v. State Highway Comm.* (1966), 31 Wis. (2d) 640, 646, 143 N. W. (2d) 429.

the "income approach" in making his appraisal because it was not a proper method and that if income capitalization was to be used it should be on a rental basis. The credibility of witnesses and the weight of the testimony then became a matter to be resolved by the jury under the instructions of the court. The court did instruct the jury that the weight and credibility must be decided by them and that they were not bound by the opinion of any expert.

It is apparent that the jury did consider and evaluate all of the testimony. As to the before taking market value, Mr. and Mrs. Lambrecht testified it was $50,000, Foltz $40,000, Stone $39,000, Graham $19,400, and Schultz $16,000. The testimony was that the property was purchased in 1962 for $27,500 and that $4,500 worth of improvements were made thereafter. The jury found the value before taking to be $25,000. As to the after taking value, which the testimony reveals was not in a significant degree calculated on capitalization of income, the jury found $17,500. It is our opinion that these findings were within the credible evidence and the jury was justified in finding as it did.

We conclude that the trial court did not commit prejudicial error in the trial in not striking the testimony of Foltz and Stone as to their opinions on value based in part on income capitalization.

The defendant also contends it was error not to assign the burden of proof to the landowners-plaintiffs. The record reveals that both landowners and the highway commission appealed to the circuit court from the award of the condemnation commissioners. At the close of the testimony the trial court and counsel for both parties discussed the proposed verdict and jury instructions. Counsel for the defendant was clearly advised by the court that the burden of proof would not be assigned to either party. The court read to counsel the instruction which was given and then asked: "Do either of you have objec-

tion to the court giving that instruction?" The response of Mr. Bernsteen, counsel for the defendant, was: "I have no objection, Your Honor." Clearly, if the instruction was erroneous, counsel for the defendant has waived any error and it will not be considered on appeal.

*By the Court.*—Order reversed, cause remanded with directions to reinstate the verdict and enter judgment accordingly.