MANCHESKI and wife, Appellants, v. STATE, Respondent.

*No. 160. Argued November 2, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 420.)

For the appellants there was a brief by *John J. Haka* of Stevens Point, and *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau, attorneys, and *Roger Rouse* and *Douglas J. Klingberg,* both of Wausau, of counsel, and oral argument by *Mr. Klingberg.*

For the respondent there was a brief by *Crooks, Low & Earl* of Wausau, and oral argument by *P. L. Crooks.*

ROBERT W. HANSEN, J.   Two issues are raised on this appeal: (1) Whether an appraiser who appraised the property as to fair market value but for tax purposes was properly permitted to testify as to fair market value of the condemned property; and (2) whether the trial court erred in permitting examination of the plaintiff as to net income received from operating the property condemned.

*Appraiser testimony.*

One Donald Kegler was qualified by the state as an expert appraiser and cost control accountant. He had earlier been hired to appraise the property condemned for tax purposes. He was permitted to testify as to fair market value. Appellants objected contending that: (1) Kegler's appraisal was for tax purposes, not for testimony at trial in a condemnation proceeding; (2) Kegler's appraisal was based on state guidelines as to factors to be considered. The trial court ruled:

". . . any testimony from this witness as to the tax assessment is not admissible and the court will not allow this witness to testify as to the tax assessment itself; [that is] solely for tax assessment purposes.

"However, if this witness has made an appraisal and has an opinion as to the fair market value, the court is going to allow him to testify in view of his qualifications here as an appraiser and cost control accountant."

The ruling of the trial court is exactly right. There is no basis in law for indulging the suspicion that an expert witness' opinion as to the fair market value of a piece of property is to be affected or determined by the use to which such opinion is to be put. If there is basis in fact on occasion for exactly such suspicion, the situation is not improved by admitting expert testimony only where the expert knows that it will be used in a trial, and presumably, also knows on which side of the value controversy it will be used. Tailoring of opinion as to how it is to be used, and by whom, is an evil to be avoided, not a goal to be sought.

That the expert's opinion as to value was based upon a memorandum of a state agency as to factors to be considered is a proper subject of cross-examination. If improper factors were considered, cross-examination can reveal that fact. The factors relied upon by an expert appraiser in reaching a conclusion as to fair market

value of property are always a proper subject of inquiry, and, on occasion, of challenge. In the case cited by appellants, the reason for ruling out evidence of assessed valuation was that it represented the opinion of people not called as witnesses and not subject to cross-examination.[1] Here the trial court did not admit the tax assessment into the record, but did permit the witness, qualified as an expert, to testify as to fair market value, subject to cross-examination, which provided adequate opportunity to question and discredit factors considered by him in reaching his opinion as to value. The evidentiary value of his opinion was for the jury to decide.

*Income evidence.*

Error is claimed in the trial court permitting cross-examination of the plaintiff as to net income received from operating the condemned property. The general rule is that evidence of net income is inadmissible to establish fair market value.[2] Wisconsin follows this general rule.[3] While there are exceptions,[4] the general rule sees the amount of profits from a business on the property as dependent upon too many contingencies to be accepted as evidence of fair market value of the property.[5] However, such net income may be admitted

---

[1] *United States v. Certain Parcels of Land* (4th Cir. 1958), 261 Fed. 2d 287.

[2] *See* 29A C. J. S., *Eminent Domain*, p. 1198, sec. 273 (3).

[3] *Lambrecht v. State Highway Comm.* (1967), 34 Wis. 2d 218, 148 N. W. 2d 732.

[4] For example, evidence of net income is admissible when (a) the highest and best use of the property is in dispute; (b) the character of the property is such that a profit is produced thereby without the labor and skill of management; (c) because of the uniqueness of the property no comparable sales are available. *See* 5 Nichols, *Eminent Domain* (3d ed.), p. 19–2, secs. 19.3 [1], 19.3 [5].

[5] "Commercial property . . . The profits of a business are too uncertain, and depend on too many contingencies safely to be ac-

under certain circumstances for certain purposes, including impeachment, refreshing the recollection of a witness, or where proper objection is not timely made.

The record here shows the following sequence as to questions asked, answers given and objections made. On cross-examination, the plaintiff was asked if he had shown a loss in operating the premises for every year of the past ten years. The plaintiff replied that he thought so but was not sure that he had. No objection was made. Then the plaintiff was asked as to a specific loss for the year 1967. The only objection made was that the year 1967 included and went beyond the time of the taking. The objection was overruled. When plaintiff was requested to bring his tax returns to court, the plaintiff's counsel objected stating in part: "I have no objection that he testified to it, but I think he has gone beyond the direct examination." The objection was overruled.

When the plaintiff was further cross-examined as to the cost of an addition to the property, he indicated that it cost $18,000, but stated that he had no records to substantiate such figure. Asked whether or not his income tax returns would show the cost of the addition, plaintiff indicated that he thought they would. Again he was asked to bring such income tax records to court the following day.

On redirect examination, the plaintiff testified that rentals or engagements at the ballroom had "dropped down right away" when the proposed beltline relocation plans became known. On redirect, he was asked to explain other reasons for his losses in operations over the past ten-year period. On redirect examination, the plaintiff was questioned as to the amount of depreciation he was told he could take on his state income tax returns

cepted as any evidence of the usable value of the property upon which the business is carried on. . . ." 5 Nichols, *Eminent Domain* (3d ed.), p. 19–48, sec. 19.3 [1].

for depreciation. When the state objected on the grounds of hearsay testimony being called for, plaintiff's counsel stated, "You brought the State Taxes out. I think you opened the door. . . ." The state's objection was overruled.

When the plaintiff brought his tax returns to court on the following day, for the first time objection was made to their use on the ground that an income test as to value was being attempted. The trial court ruled that the tax returns could be used, not to establish value, but to refresh the plaintiff's recollection and to impeach the plaintiff's testimony as to the cost of the addition to the building and as to his statement that he had lost money because of public knowledge of plans for the beltline relocation. When the state attempted to introduce the tax returns as such in evidence, the court sustained the objection by plaintiff's counsel to such introduction.

Given this sequence of events and the exact state of this record, we uphold the trial court ruling that the questioning as to income tax returns was for the purpose of impeachment and refreshing the plaintiff's recollection. Plaintiff's counsel elected to allow questions concerning net loss over a ten-year period. The objection that the year 1967 should not be included in such inquiry because it went beyond the time of taking, did not challenge testimony as to pre-taking losses. When objecting to bringing tax returns to court, plaintiff's counsel specifically stated, "I have no objection that he testified to it." On redirect, plaintiff's counsel made a detailed inquiry into reason for income losses. When objection based on the hearsay character of the tax returns was made by the state, plaintiff's counsel stated, "You opened the door." That seems to be true enough, but a consequence is that a person who walks through a door left ajar by someone else is in a poor position to complain that it was not kept locked and secured. The door, if ajar, was ajar for both parties to the lawsuit. Here

the state used the opened door to introduce tax return testimony solely for purpose of impeachment and refreshing the recollection of the witness. The plaintiff used the opened door to introduce testimony as to reasons for operating losses, including the military service of a son, hospitalizations and family problems. Neither can convert the other's use of the door, opened without objection, into reversible error.

*By the Court.*—Judgment affirmed.