LEATHEM SMITH LODGE, INC., and others, Condemnee-Respondents, v. STATE, Condemnor-Appellant.†

Supreme Court

*No. 77–221. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 808.)

† Motion for reconsideration denied, with costs, on April 8, 1980.

408

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *David T. Flanagan,* assistant attorney general.

For the respondents the cause was submitted on the brief of *Roger Pinkert* and *Pinkert, Smith, Koehn & Weir* of Sturgeon Bay.

HEFFERNAN, J. This is an appeal by the State of Wisconsin from a judgment awarding damages to Leathem Smith Lodge for the condemnation of a portion of its property for highway purposes. The state's principal argument on appeal is that the trial court erroneously excluded the opinion evidence of its appraisers based upon the income and net profits of the Leathem Smith Lodge. We conclude that the trial court, utilizing appropriate standards, properly exercised its discretion in the exclusion of the evidence. We affirm.

The state's brief is replete with citations and authority tending to show that the trial court could have admitted income evidence as proof of the value of the property before and after taking. The state's argument misses the crucial point which is dispositive of this appeal. The question is whether the trial court abused its discretion in excluding the evidence. The burden of showing an abuse of discretion rests upon the condemnor, who offered the rejected evidence. *Herro v. Department of Natural Resources*, 67 Wis.2d 407, 423, 227 N.W.2d 456 (1975) ; *Gawin v. Redevelopment Authority of City of Milwaukee*, 52 Wis.2d 380, 190 N.W.2d 201 (1971).

"The admission of evidence touching upon the value of property appropriated in condemnation cases must be left largely to the discretion of the trial judge." 5 Nichols, *Eminent Domain*, sec. 18.1[3], pp. 18–38–40.

Hence, the only significant question on this appeal is whether the trial court appropriately exercised its discretion. Because the exercise of discretion hinges upon

the proper application of law to the facts of record, it is necessary to review the factual context of this action.

The record shows that the state condemned for highway purposes a strip of land containing approximately 12.4 acres traversing the premises of the Leathem Smith Lodge, an integrated resort facility. The total acreage of the premises was 102.2 acres. The Lodge is located in the City of Sturgeon Bay and includes 2900 feet of riparian property located on the Bay. Approximately 648 feet of shoreline was taken by the condemnation.

At the time of condemnation, Leathem Smith Lodge was operated by its owners, Donald and Ruby Fredrickson, and had been a successful going business under their management since 1948. The Fredrickson family lived on the premises in a separate four-bedroom, two-story house. The Lodge was open nine months of the year and consisted of a restaurant and bar, 44 hotel and cottage rental units, a marina, a nine-hole golf course and driving range, a heated swimming pool, tennis courts, and a club house.

Approximately 80 of the 102.2 acres were actively used for resort purposes. The condemnation bisected the golf course and precluded its further use. After the condemnation, the swimming pool and Lodge were about 240 feet from the new highway and bridge across Sturgeon Bay.

The witnesses for both parties generally agreed that, as the result of the condemnation, the highest and best use of the property was changed from resort use to use as a roadside motel. It is undisputed that the financial success of the enterprise was heavily dependent on the management efforts of the Fredrickson family.

The only question at trial was the amount of the award. The crucial issue was the proper method of valuing the property before and after the taking.

The expert witnesses for the condemnee presented valuation testimony based upon comparable sales (the

market value approach) and upon cost (cost of reproduction less depreciation).

The state's witnesses before trial had valued the property by the cost method, but at trial, because operating statements of the Lodge only then became available to them, valued the property, before and after taking, on the basis of the income prior to taking and projected income after the taking. The state's original computation of value using the cost approach was substantially higher than the amount later calculated using the income method.[1]

The trial court, upon objection by the property owner, refused to admit evidence of value based upon the income method. The trial court stated that the income method was speculative and unnecessary, because other appraisers had been able to arrive at the before-and-after-taking figures by using the cost and market methods.

The testimony of the property owners' expert witnesses produced the following values:

|  | Before | After | Damages |
|---|---|---|---|
| Fredrickson | $1,650,000 | $ 800,000 | $850,000 |
| Orr | 1,475,290 | 525,190 | 950,100 |
| Starr | 1,700,000 | 1,006,000 | 694,100[2] |
| Kielisch | 1,660,000 | 1,105,000 | 555,000 |
| Packard—cost of reproducing similar nine-hole golf course, exclusive of land, at a different location |  |  | 317,000 |

[1] In their initial pre-litigation appaisals using the cost approach, the state's witnesses reached the following valuation conclusions:

|  | Before | After | Damages |
|---|---|---|---|
| Abraham | $1,547,000 | $1,340,000 | $207,000 |
| Olson | 1,500,000 | 1,300,000 | 200,000 |

[2] The record reflects minor inconsistencies in Starr's appraisal values.

The state's witnesses, in an offer of proof, using the income method testified to the following before-and-after values:

| | Before | After | Damages |
|---|---|---|---|
| Fay | $550,000 | No value given | ———— |
| Abraham | 680,000 | $555,000 | $125,000 |
| Olson | 650,000 | 550,000 | 100,000 |

Abraham and Olson valued the 22 acres of unimproved property not used in the resort business as residential property using the market approach. The principal portion of their valuations was based upon Fay's report, which was derived by examining the financial records of the resort for the preceding six years.

This court has adopted standards for the admission or exclusion of income evidence that are consistent with recognized treatises on the subject.

The general rule applicable to the admission of income evidence and the exceptions to the rule are well stated in 5 Nichols, *Eminent Domain* (3rd ed.), sec. 19.3[1], at 19–48.1:

"**Commercial property.** If the owner of property uses it himself for commercial purposes, the amount of his profits from the business conducted upon the property depends so much upon the capital employed and the fortune, skill and good management with which the business is conducted, that it furnishes no test of the value of the property. It is, accordingly, well settled that evidence of the profits of a business conducted upon land taken for the public use is not admissible in proceedings for the determination of the compensation which the owner of the land shall receive."

Sec. 19.3[5] at 19–65–6:

"**Exceptions to rule.** It has been held that where the character of the property is such that a profit is pro-

duced thereby without the labor of the owner being expended thereon or where the profits derived from its use are the chief source of its value evidence of such profits is admissible as a criterion of the value of the property.

"Where property is so unique as to make unavailable any comparable sales data evidence of income has been accepted as a measure of value. . . ." *Accord:* A. Jahr, *The Law of Eminent Domain*, sec. 150, at 232–33 (1953) ; 29A C.J.S., *Eminent Domain*, sec. 273(3), at 1198–1201; *Annot.*, 96 A.L.R.2d 666.

These general standards were specifically followed in *Mancheski v. State*, 49 Wis.2d 46, 50, 181 N.W.2d 420 (1970), and *Lambrecht v. State Highway Comm.*, 34 Wis.2d 218, 225–27, 148 N.W.2d 732 (1967). In each of these cases, the court stated that evidence of net income is ordinarily inadmissible for purposes of establishing property values in condemnation cases involving commercial enterprises, because business income is dependent upon too many variables to serve as a reliable guide for determining fair market value. These cases follow Nichols in noting that there are exceptions to the general rule of the inadmissibility of income evidence when (1) the character of the property is such that profits are produced without the labor and skill of the owner, (2) profits reflect the property's chief source of value, and (3) the property is so unique that comparable sales are unavailable. *Mancheski, supra* at 50, n. 4; *Lambrecht, supra* at 226–27.

As a starting point, it should be noted that Wisconsin law holds that income evidence is never admissible where there is evidence of comparable sales. *Rosen v. Milwaukee*, 72 Wis.2d 653, 662–63. 670–71, 242 N.W.2d 681 (1976) ; *Lambrecht, supra* at 227. Nichols, *supra*, sec. 19.3[5], p. 19–66, states that:

"Where property is so unique as to make unavailable any comparable sales data evidence of income has been accepted as a measure of value."

Because there was evidence of comparable sales in this case, the trial judge properly excluded the income method of valuation. The state argues that the sales were not comparable, because no appraiser was able to identify a sale of a full-service resort similar in nature and scale to the Leathem Smith Lodge for use as a comparable. The record shows, however, that the condemnee's witnesses—Starr, Orr, and Kielisch—furnished comparable sales data by using the sales of property that were similar to the components that made up the Lodge property. The trial court, in concluding that these sales provided adequate comparable sales data for the use of the market approach, stated:

"There was evidence of comparable water frontage sales, comparable motel sales, comparable dining and bar sales, comparable land sales, all within the Sturgeon Bay area. There was evidence of golf course costs in the county, a nine-hole golf course sale in an adjoining county, all of which information admittedly was available to the very competent appraisers hired by the State and all of whom were present at the trial."

The state now argues that the court erred in concluding that these component sales were sufficiently comparable to preclude the use of income-based valuation evidence. The state in its brief reasons that, because the Lodge was a unified economic entity prior to condemnation, the only acceptable comparable would be a sale of a similar full-service resort. It is agreed by the parties that a comparable sale of an entire resort property was not available. However, such a comparable based on the sale of a single entity is not required. A contention similar to that made by the state herein was flatly rejected in *Milwaukee & Suburban Transport Corp. v. Milwaukee County*, 82 Wis.2d 420, 449, 263 N.W.2d 503 (1978), wherein the court stated:

"The requirement that property be valued as an integrated and comprehensive entity does not mean that the individual components of value may not be examined or considered in arriving at an overall fair market value. Indeed, the widely accepted reproduction cost method of valuation, used by both parties here, determines value from the cost of reproducing the various components which make up the property. This approach does not contradict the 'unit rule' because the components are valued, not in isolation, but as interacting parts of a larger whole . . . ."

It is clear, then, that, where the property is a unitary economic entity, the sales of components that are comparable to the components of the entity to be valued are properly admissible in determining the valuation of the whole.

The question of whether comparable sales are to be admitted is within the discretion of the trial court. *Bear v. Kenosha County*, 22 Wis.2d 92, 125 N.W.2d 375 (1963) ; *Stolze v. Manitowoc Terminal Co.*, 100 Wis. 208, 75 N.W. 987 (1898) ; 5 Nichols, *supra* at sec. 21.31, p. 21–56. A trial court's determination of the acceptability of sales as comparables will not be reversed in the absence of clear error. *Weeden v. City of Beloit*, 29 Wis.2d 662, 139 N.W.2d 616 (1966). It was within the discretion of the trial court to admit as evidence of market value the comparable sales even though they were derived from the sales of comparable components rather than from the sale of an economic entity used for resort purposes. The trial court properly applied accepted rules of law to the facts at hand in admitting the evidence of comparable sales.

Because there was evidence of market value based on comparable sales, for that reason alone the trial court was justified in holding valuation based on income to be

inadmissible. In the exercise of its discretion, it supplied additional reasons for the exclusion of the income method of valuation. It pointed out that:

"[T]o accept evidence of net profits as a factor to be taken into consideration in arriving at market value, of necessity opens the case for an exploration into the accounting methods and systems of the operation of the business; the costs of original installations and replacements; raises questions of efficiency and skill . . . ."

This statement is a recognition of the rule of *Lambrecht* and *Mancheski* that, where profits are produced by reason of the labor and skill of the owner, income evidence is generally not admissible. The record is replete with testimony showing that the success of any resort depends largely on the labor and skill of its management. The state does not contest the fact that the value of the Leathem Smith Lodge depended, to a great degree, on the skillful management of the Fredricksons. It argues, however, that this could not be prejudicial to the Fredricksons, because "[a]ny variable owing to management was likely to be in the direction of increased income and higher market valuation." This argument, of course, misses the fundamental point. Valuation testimony based on income generated by owner-managed property is excluded as overly speculative, because it is difficult or impossible to ascertain how much of the income is to be attributed to the owner's management and the resultant consumer good will. Income from owner-managed property does not reflect its fair market value, because an appraiser cannot predict how good a replacement a potential buyer might be for the existing owner-manager. Because the income evidence was speculative, the trial court, in its discretion, excluded it for that reason also.

The trial court specifically excluded the income evidence for yet another reason. It stated:

"The business conducted on a part of the condemned land is not truly reflective of the value of the whole of the land and improvements."

This exercise of discretion was based upon the rationale of 5 Nichols, *supra,* sec. 19.3[5], which permits the use of income data, "where the profits derived from its use are the chief source of its value." The trial court concluded that the state also failed to lay an acceptable foundation for admitting income evidence under this exception to the rule that income evidence is inadmissible. The trial court reasoned that the income approach to valuation failed to recognize that the substantial shore frontage had a much greater value than its proportionate contribution toward generating golf course income, failed to attribute value to the Fredrickson's four-bedroom home—which generated no income, and failed to give recognition to the fact that the resort had no income during the months it was closed each winter. For this additional reason, the income approach was inappropriate for the valuation of this property.

In exercising its discretion on the basis of established Wisconsin law, the trial court appropriately held that income evidence should be excluded. It correctly held that the exceptions to the rule of inadmissibility did not apply, because comparable sales were available, the profits produced were in large measure due to the labor and skill of the owner, and the chief source of the Lodge's value was not the profits but was, instead, the actual physical and fair market value of the land and improvements thereon. Each of these reasons was carefully set forth in the trial court's thoughtful and well considered opinion.

The state on this appeal also argues that there should be a new trial in the interest of justice. It complains that

Starr, one of the witnesses produced by the Leathem Smith Lodge, was not qualified to make an appraisal. It is true that Starr stated in a deposition that he did not feel qualified to make a formal written appraisal report. However, at trial, he explained that, on the basis of his extensive experience as a real estate broker in Door County, he was competent to give an oral opinion regarding the property's value. It was within the discretion of the trial court to make a determination that Starr was qualified to give an opinion regarding the value of the property. *Valiga v. National Food Co.*, 58 Wis.2d 232, 206 N.W.2d 377 (1973); *Shaurette v. Capitol Erecting Co.*, 23 Wis.2d 538, 128 N.W.2d 34 (1964); *Carstensen v. Faber*, 17 Wis.2d 242, 116 N.W.2d 161 (1962). Whether or not Starr felt he could give a formal written appraisal is irrelevant. The fact that Starr's prior experience was carefully examined at trial demonstrates that the trial judge did not abuse his discretion in permitting Starr to testify as an expert.

The state also argues that the jury verdict was unsupported by the evidence, because the damage award was lower than any of the amounts suggested by the witnesses. We think it strange that the state complains that the verdict was too low. The verdicts returned by the jury were clearly within the range of the before and after taking values suggested by the witnesses. The fact that the damage verdict was lower than any single figure suggested by a witness at trial is explainable by the jury's combining of one of the lower before-taking values with one of the higher after-taking values. The jury was not obliged to accept both values given by any one witness. It could accept the before-taking value of one witness and the after-taking value of another. *Arrowhead Farms, Inc. v. Dodge County*, 21 Wis.2d 647, 124 N.W.2d 631 (1963).

The state also argues that income evidence should have been admitted, because it was something any buyer would be interested in knowing. That may be true, but at no time was it asserted that a prospective buyer would necessarily be interested in knowing the property's income yield. That question was not raised during trial. The evidence in respect to income was excluded not because it would be of no concern to a prospective buyer but because the state failed to lay a proper foundation under existing rules of law to show that the income approach reflected the property's fair market value.

Additionally, the state appears to argue that income evidence is admissible as evidence of value. In some instances income evidence may be appropriate for that purpose. Additionally, the general rule against the admission of income evidence does not preclude its limited use for impeachment or for refreshing a witness' recollection. *See, Mancheski, supra* at 51. However, where it is used as the sole criterion of value, as was attempted by the state's appraisers in this case, it is not admissible unless it falls within the exceptions discussed in this opinion.

We conclude that the trial court properly exercised its discretion in excluding the income-evidence testimony. The state's income approach attributed little or no value to the water frontage, to the family management of the business operation, to the fact that it was operated for only a portion of each year, to the location of a substantial family home on the property, and to the fact that the resort complex was located entirely within the corporate limits of the City of Sturgeon Bay, where there was a limited supply of vacant land and a limited supply of riparian frontage.

The condemnees have filed a motion to review the trial court's order denying actual costs. We affirm that

order, because sec. 32.05(11) (b), Stats. 1975, limits the condemnee's recovery of costs in an action of this type to no more than statutory costs and disbursements. That section provides:

"If the jury verdict as approved by the court exceeds the basic award, the appellant shall have judgment for the amount of such excess plus legal interest thereon to date of payment in full from that date which is 14 days after the date of taking, *plus statutory taxable costs and disbursements pursuant to s. 814.02(2).*" (Emphasis supplied.)

It should be noted that the trial court proceeded under sec. 814.02(2), Stats. 1975, and awarded the maximum statutory costs of $100 and disbursements. The cost award was then doubled, pursuant to sec. 807.01(3), because the jury award exceeded the pretrial settlement offer tendered by the condemnees. The trial court correctly stated that any modification of the existing statutory costs was for the legislature. Subsequently, sec. 32.28, Stats., was created to provide that condemnees could recover actual costs covering attorney and expert witness fees. This statute does not apply to the present case.

The rule applicable to this case is stated in *Wieczorek v. Franklin*, 82 Wis.2d 19, 23, 260 N.W.2d 650 (1978):

"We have said that the constitutional requirement of just compensation does not compel the condemnor to pay the condemnee's attorney's fees in eminent domain proceedings. *Martineau v. State Conservation Comm.*, 54 Wis.2d 76, 85, 194 N.W.2d 664 (1972). The allowance of attorney's fees in condemnation cases is a matter of policy to be determined by the legislature and not a matter of constitutional right."

We affirm the court's order allowing costs.
*By the Court.*—Judgment affirmed.