NATIONAL AUTO TRUCKSTOPS, INC., Plaintiff-
Appellant,†

v.

STATE OF WISCONSIN, DEPARTMENT OF TRANSPORTATION,
Defendant-Respondent.

Court of Appeals

*No. 02–1384. Submitted on briefs December 3, 2002.—Decided
December 17, 2002.*

2003 WI App 14

(Also reported in 656 N.W.2d 798.)

† Petition to review granted 2-19-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Diane P. Gerth* and *Bradley J. Gunn* of *Leonard, Street & Deinard (Pro Hac Vice)* of Minneapolis, MN.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Pamela Magee*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. National Auto Truckstops, Inc., appeals a judgment entered on a jury verdict awarding

it $275,000 in compensation for property condemned by the Department of Transportation and an order denying its motion for a new trial. National Auto argues the trial court erred when it (1) excluded evidence relating to damages National Auto experienced as a result of its loss of access to the adjoining road; and (2) barred National Auto from presenting evidence using the income approach to value the property. We conclude the trial court properly excluded the evidence relating to both of these issues and therefore affirm the judgment and order.

## BACKGROUND

¶ 2. National Auto owns a truckstop at the intersection of U.S. Highway 12 and Interstate 94 near Hudson. National Auto rents the truckstop to Twin City East, which operates and manages the facility. In 1996, the DOT acquired .27 acres of the truckstop's frontage along Highway 12 as part of a planned reconstruction of the intersection. In addition, the DOT acquired a temporary easement for use during the construction. The DOT did not purport to take National Auto's access rights to Highway 12.

¶ 3. Prior to reconstruction, the truckstop had two direct access points on Highway 12, one intended for trucks and the other for automobiles. As part of the reconstruction, the DOT widened Highway 12 to four lanes and constructed a frontage road on the condemned property. After the reconstruction, all vehicles had to enter the truckstop via the frontage road, which could only be accessed by an intersection north of the property. The frontage road retained the separate entrances for trucks and automobiles. The section of Highway 12 located near the truckstop was at no time a controlled-access highway.

¶ 4. National Auto appealed to the circuit court. It retained two appraisers who evaluated the condemnation damages at approximately $1 million. The State brought a motion to exclude the appraisals in part because they (1) considered damages for the truckstop's change in access; and (2) were partly based on the income approach to valuation. The court granted this motion and the appraisers revised their valuations to reflect the court's order. The new appraisals valued the taken property at $350,000 and $12,550[1] using the comparable sales approach and the cost approach, which along with the income approach are the three methods appraisers use to value property.

¶ 5. At trial, the court prevented National Auto from introducing any evidence of the income approach to valuation and damages related to the change of access. In addition, the court instructed the jury not to consider damages resulting from the change in access and denied National Auto's proposed instruction on the income approach. The jury awarded National Auto $275,000. Both parties brought motions for a new trial, which the court denied. National Auto appeals.

## DISCUSSION

*A. Access*

¶ 6. National Auto first argues the trial court erred when it excluded evidence relating to National Auto's damages suffered by the change in access. We

---

[1] In their brief, National Auto explains the $12,550 appraisal was only to be used as the basis for an appeal in the event the other appraisal was still excluded. At trial, National Auto only introduced the $350,000 appraisal, while the State offered the $12,550 valuation.

749

review a circuit court's decision to exclude evidence under an erroneous exercise of discretion standard. *State v. Brewer*, 195 Wis. 2d 295, 309, 536 N.W.2d 406 (Ct. App. 1995). Therefore, we will affirm the decision if the court examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion using a demonstrated rational process. *Magyar v. Wisconsin Health Care Liab. Ins. Plan*, 211 Wis. 2d 296, 302, 564 N.W.2d 766 (1997), *aff'd*, 242 Wis. 2d 491, 625 N.W.2d 291 (2001).

¶ 7. National Auto argues the court erred by not admitting the evidence because it had a legal right to recover those damages. Essentially, National Auto claims it has a right of access to Highway 12, the DOT's project deprived it of that right, and it is allowed to recover for that deprivation under Wis. Stat. § 32.09(6)(b).[2] National Auto admits this statute allows the State to restrict or deny access without compensation if it is done pursuant to a valid exercise of police

---

[2] Wisconsin Stat. § 32.09(6) provides:

**Rules governing determination of just compensation.** ...

(6) In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist:

. . . .

(b) Deprivation or restriction of existing right of access to highway from abutting land, provided that nothing herein shall operate to restrict the power of the state or any of its subdivisions

power. However, National Auto argues the only valid exercise of the police power in this circumstance would be if the State had declared Highway 12 a controlled-access highway pursuant to WIS. STAT. § 84.25, which does not give landowners a right of access to these highways. WIS. STAT. § 84.25(6).[3]

¶ 8. National Auto, however, misunderstands its right of access. The "existing right of access" under WIS. STAT. § 32.09(6)(b) includes the right of an abutting property owner to ingress and egress. *Narloch v. DOT*, 115 Wis. 2d 419, 432, 340 N.W.2d 542 (1983). The property owner's right is to access, not to existing access points. *Id.* at 430. If this right is taken, then the State is required to compensate the property owner unless the condemnation involves access to a controlled-access highway. *Schneider v. State*, 51 Wis. 2d 458, 462–63, 187 N.W.2d 172 (1971). Deprivation of direct access to a highway does not constitute a taking of property provided reasonable access remains. *Id.*

---

or any municipality to deprive or restrict such access without compensation under any duly authorized exercise of the police power.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[3] WISCONSIN STAT. § 84.25 provides:

**Controlled-access highways.** . . .

(6) ABUTTING OWNERS. After the designation of a controlled-access highway, the owners or occupants of abutting lands shall have no right or easement of access, by reason of the fact that their property abuts on the controlled-access highway or for other reason, except only the controlled right of access and of light, air or view.

¶ 9. Here, the State has not taken National Auto's right of access because it has not completely removed its right of ingress and egress to Highway 12. National Auto still has access to Highway 12 through the frontage road. A frontage road provides reasonable access to and from a landowner's property. *See id.* Nor is any diminution of value in land compensable because the State made access to the highway more circuitous. *Nick v. State Hwy. Comm'n*, 13 Wis. 2d 511, 518, 109 N.W.2d 71 (1961). Because the State did not take National Auto's right of access, the trial court properly excluded evidence relating to National Auto's claim for damages.

*B. Income method valuation*

¶ 10. National Auto also argues the court erroneously excluded evidence valuing the property using the income method. We disagree. Wisconsin law provides that income evidence is never admissible where there is evidence of comparable sales. *Leathem Smith Lodge, Inc. v. State*, 94 Wis. 2d 406, 413, 288 N.W.2d 808 (1980). National Auto does not dispute evidence of comparable sales was available in this case.

¶ 11. Nonetheless, National Auto contends the trial court should have admitted the income evidence. It points to the *Leathem* decision, where the supreme court discussed the exceptions to the inadmissibility of income valuations and our more recent reaffirmation of these exceptions in *Rademann v. DOT*, 2002 WI App 59, 252 Wis. 2d 191, 642 N.W.2d 600. National Auto contends its property meets the requirements of one of these exceptions, specifically that the truckstop is not owner-managed and that the property's profits are produced without National Auto's labor and skill. It

contends the only income it receives from the property is the rent it collects from Twin City East. National Auto claims because this is not speculative, like business profits, the court should have admitted it.

¶ 12. Further, National Auto argues Wisconsin case law regarding the admission of income approach valuation is confusing, inconsistent and outdated in light of modern appraisal practices. While we agree that the case law is somewhat confusing and inconsistent in this area, we decline to reverse the trial court because we cannot say it erroneously exercised its discretion by excluding the income evidence.

¶ 13. In *Leathem*, the supreme court noted income evidence is ordinarily inadmissible to establish property values because business income depends on too many variables, such as the owner's skill and talent, to be reliable as a guide to the fair market value. *Leathem*, 94 Wis. 2d at 413. The court also noted three exceptions to this rule: (1) when the character of the property is such that profits are produced without the labor and skill of the owner; (2) when profits reflect the property's chief source of value; and (3) when the property is so unique that comparable sales are unavailable. *Id.* The court then went on to hold that income evidence is never admissible when evidence of comparable sales is available. *Id.*

¶ 14. Our supreme court revisited this issue in *Vivid, Inc. v Fiedler*, 219 Wis. 2d 764, 580 N.W.2d 644 (1998), which involved compensation for the taking of billboards. There, the court stated the three exceptions listed in *Leathem* were exceptions to the rule that income evidence is never admissible where there is evidence of comparable sales, not to the general inadmissibility of income evidence. *See Vivid*, 219 Wis. 2d at 792. The owner of the billboards in *Vivid* submitted

753

evidence valuing the signs under the comparable sales approach using a General Income Multiplier (GIM) as well as income valuation. *Id.* at 773, 791.

¶ 15. The court issued two opinions in *Vivid*, a three-justice lead opinion and a four-justice concurrence that is actually the court's opinion. *Id.* at 797 n.1. The concurring justices took issue with what they believed was the other opinion's "carte blanche" approval of the GIM valuation, arguing the GIM could improperly consider impermissible factors such as business profits in its calculation. *Id.* at 804. The concurrence held trial courts should review GIM valuations prior to their admission to ensure they did not contain any such speculative considerations. *Id.* In addition, the three-justice opinion approved of the trial court's admission of separate income approach evaluation because it fit under at least one of the exceptions. *Id.* at 792. The concurring justices did not challenge this decision, although their discomfort with the GIM valuation was, in part, because it considered business profits, one of the reasons income evidence is generally excluded. *See id.* at 804.

¶ 16. Finally, in *Rademann*, we rejected a claim that *Vivid* modified *Leathem* to allow the admission of income evidence if it met one of the exceptions. *Rademann*, 2002 WI App 59 at ¶ 31. Specifically, we said the *Vivid* decision only applied to compensation for billboards, not other property. *Id.* We upheld the trial court's exclusion of income evidence used to value a quarry, saying "in light of the availability of comparable sales, under *Leathem* . . . the trial court acted within its discretion." *Rademann*, 2002 WI App 59 at ¶ 32.[4]

---

[4] Dissenting in part and concurring in part, Judge Brown disagreed with the majority's treatment of *Vivid* and *Leathem*.

¶ 17. We agree the status of the admissibility of income evidence is confusing in light of *Leathem*'s statement that income evidence is never admissible if proof of comparable sales is available, and *Vivid*'s statement that the exceptions apply to this rule, rather than the income evidence's general inadmissibility regardless of the availability of comparable sales. Nonetheless, *Leathem*, *Vivid*, and *Rademann* all stand for the proposition that income evidence is generally disfavored as a method of measuring property values and that it is within the trial court's discretion to admit or exclude this evidence. We conclude here, as we did in *Rademann*, that the trial court did not erroneously exercise its discretion when it excluded the income evidence given the availability of comparable sales evidence under *Leathem*.

¶ 18. Finally, National Auto argues income evidence should be admissible because it reflects the modern trend in business appraisal. While this may very well be the case, our review is limited to whether the trial court exercised its discretion. In light of the availability of comparable sales and the disfavored status of income evidence in our state, we are satisfied the trial court properly used its discretion in excluding the evidence.

*By the Court.*—Judgment and order affirmed.

He said he did not read *Vivid* to allow income evidence to be admitted in the valuation of billboards, pointing to the concurrence's discomfort with the income-related aspects of the GIM valuation. *Rademann v. DOT*, 2002 WI App 59, ¶ 61, 252 Wis. 2d 191, 642 N.W.2d 600.